Michael B. ELGIN, Aaron Lawson, Henry Tucker and Christon Colby on behalf of themselves and similarly situated men throughout the United States, Plaintiffs,

v.

UNITED STATES of America, United States Department of the Treasury, and United States Department of the Interior, Defendants.

Civil Action No. 07–12391–DPW.

United States District Court,
D. Massachusetts.

March 11, 2010.

Lori A. Jodoin, Harvey A. Schwartz, Rodgers, Powers & Schwartz LLP, Boston, MA, for Plaintiffs.

Jennifer A. Serafyn, United States Attorney's Office, Boston, MA, for Defendants.

*MEMORANDUM AND ORDER*

DOUGLAS P. WOODLOCK, District Judge.

The Plaintiffs are male U.S. residents who lost or were denied employment positions in federal agencies, pursuant to 5 U.S.C. § 3328, for having failed to register for military service with the Selective Service System as required by federal law. In a January 26, 2009 Memorandum and Order, I determined that 5 U.S.C. § 3328 was an unconstitutional bill of attainder. *Elgin v. United States,* 594 F.Supp.2d 133 (D.Mass.2009). The case is now before me on three motions: the motion by the Defendants to reconsider the Court's bill of attainder determination, the Plaintiffs' motion for a preliminary injunction, and the Plaintiffs' motion to certify a class for purposes of Fed.R.Civ.P. 23. Because I will grant the Defendant's motion for reconsideration and dismiss the case, I do not address Plaintiffs' motions, which will be rendered moot.

## I. BACKGROUND

The background of the case was recited in detail in the January 26, 2009 Memorandum, consequently I need offer only a brief discussion here. The Plaintiffs are male U.S. residents age twenty-six or older, each of whom was employed by a federal agency. Each lost his position as a result of failing to register with the Selective Service System. The Military Selective Service Act ("MSSA") requires every male resident between the ages of eighteen and twenty-six to register with the Selective Service, 50 App. U.S.C. § 453(a), while 5 U.S.C. § 3328 states that anyone who knowingly or willfully did not register shall be ineligible for employment with an executive agency. 5 U.S.C. § 3328.

The Plaintiffs' Amended Complaint has two counts, Count One alleging that § 3328 is an unconstitutional bill of attainder, and Count Two alleging that the male-only classification in the MSSA discriminates on the basis of sex, in violation of equal protection. In the January 26, 2009 Memorandum, I dismissed Count Two

from the case, *Elgin*, 594 F.Supp.2d at 145–48, but I granted the Plaintiffs' motion for partial summary judgment as to Count One, finding that 5 U.S.C. § 3328 operates as an unconstitutional bill of attainder for those men who were no longer eligible to register with the Selective Service System. *Id.* at 138–45.

## II. MOTION FOR RECONSIDERATION

The Defendants move for reconsideration pursuant to Fed.R.Civ.P. 59(e). The Defendants maintain that the determination was in error for two reasons: first, that this Court does not have subject matter jurisdiction over the Plaintiffs' claims; and second, even if there is subject matter jurisdiction, it was an error of law to find that 5 U.S.C. § 3328 was an unconstitutional bill of attainder. Necessarily, I must address subject matter jurisdiction before taking up again the merits of the bill of attainder claim.

### A. Standard of Review

A district court has "substantial discretion and broad authority to grant or deny" a motion for reconsideration. *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 81 (1st Cir.2008). A court may grant a motion for reconsideration "where the movant shows a manifest error of law or newly discovered evidence." *Id.* at 81–82 (quoting *Kansky v. Coca–Cola Bottling Co. of New England*, 492 F.3d 54, 60 (1st Cir.2007)). A motion for reconsideration should also be granted if the court has "patently misunderstood" a party, or if the court made an error "not of reasoning but of apprehension." *Ruiz Rivera*, 521 F.3d at 82 (internal quotations omitted).

### B. Subject Matter Jurisdiction

The Defendants now contend for the first time in their motion for reconsideration that this Court lacks subject matter jurisdiction to hear the Plaintiffs' constitutional challenge to 5 U.S.C. § 3328.[1] The Defendants argue first that the Court of Appeals for the Federal Circuit has exclusive jurisdiction over the Plaintiffs' claims, under the Civil Service Reform Act of 1978 ("CSRA"), Pub.L. No. 95–454, 92 Stat. 1111 (codified in scattered sections of 5 U.S.C.). Second, they argue that even if this Court could have jurisdiction in such matters, it cannot hear this case because the Plaintiffs have failed to exhaust their remedies under the CSRA.

1. Challenges to a court's subject matter jurisdiction may be raised at any time. Fed. R.Civ.P. 12(h)(3). Indeed, federal courts have a continuing duty to assure, even if acting *sua sponte*, that cases before them fall within the court's jurisdiction. *In re Recticel Foam Corp.*, 859 F.2d 1000, 1002 (1st Cir.1986). The Plaintiffs contend that the Defendants are judicially estopped from asserting that the Merit Systems Protection Board ("MSPB") has jurisdiction over the Plaintiffs' claims, given that in prior administrative proceedings the Defendants adopted the opposite legal stance. The principle of judicial estoppel " 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another case.' " *New Hampshire v. Maine*, 532 U.S. 742, 749–50, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n. 8, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000)). While the principle may be sound regarding other legal arguments, it is the tension with Rule 12(h)(3), which permits a Court to address the matter of subject matter jurisdiction "at any time." Fed.R.Civ.P. 12(h)(3). More fundamentally, as noted, a court has a continuing independent obligation to ensure that it is properly asserting jurisdiction over a matter. *In re Recticel*, 859 F.2d at 1002. Because the Defendants' motion is based on unaddressed questions of jurisdiction that have not been fully aired until now—albeit as a result of the Defendants' failure to raise them earlier—it is necessary to address them, notwithstanding contradictory positions taken before the MSPB.

## 1. Federal Court Jurisdiction

The Defendants' current position is that the Merit Systems Protection Board ("MSPB" or "Board") has jurisdiction to hear the Plaintiffs' claims under the CSRA, and that the Federal Circuit has exclusive jurisdiction to hear MSPB appeals, leaving this Court with no jurisdiction over the claims. Federal courts have jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Because the Plaintiffs' challenge arises under the Constitution, "[t]he question, then, is not whether [the CSRA] confers jurisdiction, but whether [the CSRA] removes the jurisdiction given to [certain] federal courts," *Whitman v. Dep't of Transportation,* 547 U.S. 512, 514, 126 S.Ct. 2014, 164 L.Ed.2d 771 (2006) (per curiam), and vests that jurisdiction elsewhere.

### a. Administrative Review Under the CSRA

■ Congress passed the CSRA in 1978 "to replace the haphazard arrangements for administrative and judicial review of personnel action." *United States v. Fausto,* 484 U.S. 439, 444, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988). The CSRA "prescribes in great detail the protections and remedies applicable to [adverse personnel actions against federal employees], including the availability of administrative and judicial review." *Id.* at 443, 108 S.Ct. 668.

The CSRA has several provisions governing personnel actions taken by an administrative agency. Chapter 43 of the CSRA governs personnel actions based on unacceptable job performance. 5 U.S.C. § 4301. An agency may remove an employee for unacceptable performance, as long as the employee receives certain procedural protections. § 4303(a), (b). Chapter 23 forbids an agency from engaging in "prohibited personnel practice," such as unlawful discrimination, political coercion, nepotism, and retaliation against whistleblowers. 5 U.S.C. § 2302(b). Under Chapter 75 of the CSRA, an agency may engage in the removal of an employee "only for such cause as will promote the efficiency of the service." 5 U.S.C. § 7513(a); *see Fausto,* 484 U.S. at 445–46, 108 S.Ct. 668 (discussing the appeal provisions of Chapters 43, 23 and 75).

The MSPB is charged by statute with jurisdiction over some of the personnel actions taken under these Chapters. The MSPB "shall hear, adjudicate, or provide for the hearing or adjudication, of all matters within the jurisdiction of the Board under [title 5], chapter 43 of title 38, or any other law, rule, or regulation, and, subject to otherwise applicable provisions of law, take final action on any such matter." 5 U.S.C. § 1204. The MSPB has jurisdiction over appeals of Chapter 75 removals promoting the efficiency of the civil service. § 7513(d); 5 C.F.R. § 1201.3(a)(1), (2). The MSPB's administrative review, however, has some limitations. For instance, a right of appeal for Chapter 43 actions is not provided to every affected employee; only competitive service employee[2] and preference eligible members of the excepted service[3] can appeal decisions to the MSPB. 5 U.S.C. § 4303(e).

Once an eligible employee or applicant for employment has received an MSPB

---

**2.** "Competitive service" employees are those for whom President nomination and Senate confirmation are not required, and who are not specifically excepted from the competitive service by statute or regulation. 5 U.S.C. § 2102.

**3.** "Excepted service" refers to the classification of employees that has been excluded from the competitive service by regulation, 5 U.S.C. § 2103, and "preference eligible" employees are certain veterans and their close relatives. 5 U.S.C. § 2108.

"final order or decision" that adversely affects him, he may then obtain judicial review of the decision. 5 U.S.C. § 7703(a)(1). A petition for review of an MSPB decision must be filed in the Federal Circuit, § 7703(b)(1), which has exclusive jurisdiction over appeals from final orders and decisions of the MSPB. 28 U.S.C. § 1295(a)(9).

### b. Jurisdiction over the § 3328 Challenge

Federal regulations outline the procedure for determining whether an individual is eligible for agency employment under 5 U.S.C. § 3328. 5 C.F.R. § 300.705 (1999). If an individual is age twenty-six or over, and has failed to register, the agency provides the individual with written notice that he is ineligible for agency appointment unless his failure to register was neither knowing nor willful. 5 C.F.R. § 300.705(d)(1). The individual can then submit a written request for the Office of Personnel Management ("OPM") to decide whether failure to register was knowing and willful. *Id.* The applicant has the burden to prove that his failure to register "was neither knowing nor willful," otherwise the individual is deemed not eligible for federal employment. 5 C.F.R. § 300.705(e); § 300.706(a).

■ In this case, the Plaintiffs' challenge is not to the OPM determinations that their failure to register was knowing or willful, but rather to the constitutionality of the statute itself. Although the Defendants contend that the MSPB has jurisdiction to hear the Plaintiffs' constitutional challenge of 5 U.S.C. § 3328, they have not shown which provision of the CSRA creates this jurisdiction and I find none.

· The Defendants seem to base their jurisdictional claim on Chapter 75, but a Chapter 75 personnel action is not involved in § 3328 ineligibility determinations. When the employing agencies and the OPM determined that the Plaintiffs were ineligible for federal employment for failure to comply with the Selective Service registration requirement, the decision was not for "such cause as will promote the efficiency of the service," 5 U.S.C. § 7513(a), and therefore does not fall under the Chapter 75 grant of MSPB jurisdiction. The ineligibility determination was based instead on an independent statutory ban not referenced in the CSRA. The OPM decision regarding § 3328 eligibility is made irrespective of the Plaintiffs' performance in agency positions or the agencies' efficiency demands. The Defendants suggest that Chapter 75 provides the MSPB with broad jurisdiction over all terminations or removals of federal employees, but this is not supported by the language of the statute, which limits removals under Chapter 75 to those that are designed to promote civil service efficiency.

Indeed, the regulations implementing § 3328 suggest the opposite of what the Defendants argue. The regulations provide that once the OPM issues its decision that an employee's failure to register with the Selective Service was knowing and willful, the determination is final, and "[t]here is no further right to administrative review." 5 C.F.R. § 300.706(c).

The Defendants extend their argument further, suggesting that the MSPB also has jurisdiction to determine as a threshold matter whether the action is in fact an appealable adverse action within the meaning of Chapter 75. In their Reply brief, the Defendants cite *Grosdidier v. Chairman, Broad. Bd. of Governors,* 560 F.3d 495 (D.C.Cir.2009), which noted that "the CSRA is the exclusive avenue for suit *even if the plaintiff cannot prevail in a claim under the CSRA.*" *Id.* at 497 (emphasis added). To prevent an "end-run" of the CSRA, "we have told federal employees,

'what you get under the CSRA is what you get.'" *Id.* (internal citations omitted). In *Grosdidier*, however, the plaintiffs' claim was premised on the argument that the employing agency had acted arbitrarily and capriciously in failing to hire them. *Id.* at 496. Rather than making a facial constitutional challenge to a statute, the *Grosdidier* plaintiffs challenged the agency's individual personnel decisions, an issue that the CSRA was designed to encompass.

The MSPB itself has had occasion to address this question and has stated on more than one occasion that as a threshold matter, the Board has no jurisdiction to review an ineligibility determination under 5 U.S.C. § 3328. When the Plaintiff, Michael Elgin, appealed his OPM determination to the MSPB, for example, the Board refused to hear the case concluding that "[b]ecause the statutory prohibition against the appellant's appointment is absolute" under § 3328, "the appellant has no entitlement to Board review of the agency's action at issue in this matter." *Elgin v. Dep't of the Treasury,* No. PH-0752-08-0004-I-1, 2007 MSPB LEXIS 7502, at *9 (Nov. 16, 2007); *see also Charner v. Office of Personnel Mgmt.,* No. PH-3443-08-0601-I-2, 2009 MSPB LEXIS 1296, at *10–11 (March 6, 2009) (finding that the MSPB lacked jurisdiction to review an OPM decision under § 3328); *Clarke v. Office of Personnel Mgmt.,* No. DA-3443-07-0538-I-1, 2007 MSPB LEXIS 7101, at *10–11 (Dec. 17, 2007) (same); *Belmares–Avalos v. Office of Personnel Mgmt.,* No. CH-300A-07-0351-I-1, 2007 MSPB LEXIS 4900 at *1–2 (May 9, 2007) (same).

One of the reasons for the MSPB's conclusion is that "the Board lacks authority to determine the constitutionality of a statute." *Elgin,* 2007 MSPB LEXIS 7502, at *10. It is "well-settled" that the MSPB "has no power to determine the constitutionality of a federal statute." *Hara v. Office of Personnel Mgmt.,* No. PH-0831-08-0099-I-2, 2008 MSPB LEXIS 6601, at *13 (Dec. 17, 2008); *see also Bayly v. Office of Personnel Mgmt.,* 42 M.S.P.R. 524, 525–26 (1990) ("The administrative judge correctly determined that the Board, as an administrative agency, is without authority to determine the constitutionality of Federal statutes."); *Brooks v. Office of Personnel Mgmt.,* 59 M.S.P.R. 207, 215 n. 7 (1993) (superceded on other grounds) (finding that the Board lacks authority to determine the constitutionality of a statute, but can adjudicate a constitutional challenge to an agency's application of a statute).

The Defendants argue in their Reply brief that Congress may expressly remove a class of claims from the jurisdiction of the courts. They cite, for example, an immigration law provision eliminating Article III jurisdiction to review the decision to remove aliens who have committed certain criminal offenses. 8 U.S.C. § 1252(a)(2)(C). Neither this nor any other of the Defendants' examples, however, involve removing the power of Article III Courts to examine the constitutionality of a statute. That power remains with the judicial branch.

*McNary v. Haitian Refugee Ctr., Inc.,* 498 U.S. 479, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991) is instructive. *McNary* involved § 210(e) of the Immigration and Nationality Act, which created the administrative and judicial review provisions for an amnesty program for agricultural workers. *Id.* at 483, 111 S.Ct. 888. The plaintiffs made both constitutional and statutory challenges to the INS procedures, alleging violation of due process and of the Immigration Reform and Control Act of 1986. The Supreme Court determined that because the respondents

did not seek "review on the merits of a denial of a particular application," the district court's federal question jurisdiction under 28 U.S.C. § 1331 "remains unimpaired." *Id.* at 494, 111 S.Ct. 888.

To be sure, in *Brown v. Dep't of Veterans Affairs*, 451 F.Supp.2d 273 (D.Mass. 2006), Judge Saylor declined to permit the plaintiff to bypass the administrative scheme in raising an as-applied challenge to a statute, 38 U.S.C. § 5313(a)(2), where Congress had empowered the Secretary of Veterans Affairs to "decide all questions of law and fact necessary to a decision." *Brown*, 451 F.Supp.2d at 279 (quoting 38 U.S.C. § 511(a)). In *Brown*, however, Judge Saylor also concluded that the courts did have jurisdiction to entertain a facial challenge to the statute, and proceeded to engage in an equal protection analysis to that end. *Id.* at 280–82.

Two cases cited by the Plaintiffs discuss MSPB jurisdiction, but they are not precisely on point. In *Dep't of the Navy v. Egan*, 484 U.S. 518, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988), the employee was denied a required security clearance for his position with the Navy, and subsequently was removed from federal employment altogether when no other nonsensitive position could be found for him. *Id.* at 522, 108 S.Ct. 818. Both parties agreed that Egan was entitled to a hearing before the MSPB under 5 U.S.C. § 7513(d) on the issue of removal, but they disputed whether the MSPB had authority to review the merits of the Navy's underlying security clearance determination. *Id.* at 526, 108 S.Ct. 818. The crux of the Supreme Court's decision was that a security clearance determination was itself not an "adverse action" for purposes of Chapter 75; only the subsequent removal decision was found reviewable. *Id.* at 530, 108 S.Ct. 818. Unlike here, however, Egan sought review of a "sensitive and inherently dis-

cretionary judgment call," *id.* at 527, 108 S.Ct. 818, while the Plaintiffs in this case seek review of a statute's constitutionality.

In *Mullenberg v. United States*, 857 F.2d 770 (Fed.Cir.1988), the plaintiff challenged her termination from the Indian Health Service when it was discovered that she had been erroneously classified as an "Indian," which had given her a hiring preference pursuant to the Indian Reorganization Act, 25 U.S.C. §§ 461–479. The Federal Circuit denied her request for administrative and judicial review, finding that the plaintiff had not been discharged under Chapter 43 or 75, and therefore had no right to review under the CSRA. *Id.* at 772. Again, unlike this case, the plaintiff in *Mullenberg* had asserted no colorable constitutional claim. *Id.* at 773.

The Defendants have identified no statutory provision that would provide the MSPB with jurisdiction to hear the Plaintiffs' constitutional challenge to § 3328, and I can find no such provision in my reading of the CSRA. Because the MSPB lacked jurisdiction to hear the Plaintiffs' claims, the Federal Circuit likewise lacks exclusive jurisdiction to hear the Plaintiffs' suit. What remains is this Court's jurisdiction under 28 U.S.C. § 1331 to hear claims arising under the Constitution.

## 2. Exhaustion of Administrative Remedies

 The Defendants' alternative jurisdictional argument is that even if this Court can review the Plaintiffs' constitutional challenge, it cannot do so until the Plaintiffs exhaust their administrative remedies. Under the doctrine of exhaustion of administrative remedies, " 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.' " *Woodford v. Ngo*, 548 U.S. 81, 88–89, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006)

(quoting *McKart v. United States*, 395 U.S. 185, 193, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969)). The CSRA requires the exhaustion of administrative remedies in order to "prevent[ ] litigants from bypassing Congress' carefully crafted remedial scheme" and to "permit[ ] the federal agency to correct the violation or to explain its decision." *Irizarry v. United States*, 427 F.3d 76, 79 (1st Cir.2005).

According to the Defendants, once the MSPB determined that it lacked jurisdiction to hear Elgin's constitutional challenge to § 3328, Elgin was obligated to appeal the jurisdiction question to the Federal Circuit before turning to federal district court. The Defendants cite the *Elgin* MSPB opinion, which explicitly notified Elgin that he had a right to petition the Federal Circuit for review of the MSPB's decision. The notice, however, comes after the administrative judge's signature of the decision and appears to be little more than boilerplate appended through the cut and pass functionality of a word processor. I conclude the MSPB made no decision on the merits of Elgin's suit because it declined to find jurisdiction to do so. The MSPB did not undertake in any reasoned way to decide which, if any, Article III Courts would have jurisdiction to conduct review of the determination on the merits. Indeed, the MSPB could not direct jurisdiction to a particular court without express Congressional authorization.

The exhaustion requirement does not apply here for two reasons. First, there is no "prescribed administrative remedy," *Woodford*, 548 U.S. at 89, 126 S.Ct. 2378, for constitutional challenges to statutes affecting federal employment. The CSRA never mentions 5 U.S.C. § 3328, the treatment of facial constitutional challenges to federal statutes, or the treatment of employment decisions based on constitutional grounds not referenced in the CSRA.

The second reason is that "[t]raditional exhaustion principles ... include an exception for instances when resort to the administrative route is futile or the remedy inadequate." *Drinkwater v. Metro. Life Ins. Co.*, 846 F.2d 821, 826 (1st Cir.1988) (internal quotations omitted). The MSPB's repeated determinations that it lacks jurisdiction to review constitutional challenges to federal statutes illustrate that pursuing administrative relief was futile.

 Of course, when a constitutional claim and statutory claim are intertwined, "a plaintiff must first pursue the administrative machinery." *Steadman v. Governor, U.S. Soldiers' and Airmen's Home*, 918 F.2d 963, 967 (D.C.Cir.1990). In *Steadman*, a remedy was available to the plaintiff both under the statutory scheme and under the Constitution. *Id.* at 964–65. Similarly, in *Egan*, 484 U.S. 518, 108 S.Ct. 818, appeal to the Federal Circuit was appropriate when the MSPB decided that it lacked jurisdiction to review the agency's underlying security clearance determination because it involved a mixed question of jurisdictional issues and a proper CSRA question under 5 U.S.C. § 7513. Here, however, there is no remedy under the statutory scheme because the Plaintiffs' only claim is a constitutional one.

## C. Section 3328's Status as a Bill of Attainder Given the Statute's Specification

On the merits, the Defendants argue that, if this matter is properly before this Court, I should reconsider my determination that 5 U.S.C. § 3328 is an unconstitutional bill of attainder. I may do so "where the movant shows a manifest error of law ..." *Ruiz Rivera*, 521 F.3d at 81–82 (internal quotations omitted).

The Defendants state two grounds for reconsidering the constitutional analysis of the statute: the erroneous application of the "past conduct" element in bill of attainder analysis; and a misunderstanding of the OPM's treatment of the MSSA knowledge presumption. I reach only the "past conduct" element, which I find dispositive.

■ In the January 26, 2009 Memorandum and Order, I discussed the elements that must be demonstrated to show that Congress has enacted an unconstitutional bill of attainder. *Elgin*, 594 F.Supp.2d at 138–45. The main requirements are "specification of the affected persons, punishment, and lack of a judicial trial." *Selective Service System v. Minnesota Public Interest Research Group ("MPIRG")*, 468 U.S. 841, 847, 104 S.Ct. 3348, 82 L.Ed.2d 632 (1984).

■ When considering whether the statute targeted "past conduct," I looked at past conduct at the time that the employing agencies discovered the Plaintiffs' failure to register. *Id.* at 138–40. The Defendants now focus their argument more forcefully on the contention that the targeted persons' conduct must be past conduct at the time that the law is passed. To support their position they cite *SeaRiver Maritime Financial Holdings v. Mineta*, 309 F.3d 662 (9th Cir.2002), which states that to determine whether a statute is a bill of attainder, the court looks to "whether the identity of the individual or class was 'easily ascertainable' *when the legislation was passed.*" *Id.* at 669 (emphasis added).

The contention is fundamental to this case because at the time § 3328 was passed in 1985, the Plaintiffs and all those who came within the scope of the statute were either too young to register, or in Elgin's case, young enough still to register before turning twenty-six. The statute therefore did not punish anyone when passed, because it applied only to men "born after December 31, 1959," 5 U.S.C. § 3328(a)(1), in other words, to men who had not yet reached age twenty-six.[4]

■ The Supreme Court has never explicitly held that in order for a law to be a bill of attainder, the affected parties must be "specified" or "easily ascertainable" at the time the legislation is passed. In fact, *SeaRiver* is the only case cited by the parties which research has shown to say so unambiguously. Yet looking more closely at the cases in which the bill of attainder prohibition was at issue and the history and purpose of the bill of attainder, it becomes clear that the targeted class must be "specified" at the time the legislation is enacted.

## 1. Bill of Attainder Case Law

While the case law, apart from *SeaRiver*, does not explicitly pinpoint the moment of "specification," those few cases in which the Supreme Court has held a statute to be an unconstitutional bill of attainder support the contention that the *sine qua non* of specificity is a class that is closed or fixed at the time of the law's enactment. The Court's earliest cases, *Cummings v. Missouri*, 71 U.S. (4 Wall) 277, 18 L.Ed. 356 (1866), and *Ex parte Garland*, 71 U.S. (4 Wall) 333, 18 L.Ed. 366 (1866), both concerned Civil War-era laws that made loyalty oaths a precondition to practicing certain professions, thereby effectively barring all those who had supported the Confederacy from those vocations. At the time the provisions were

---

4. It bears noting that anyone born on January 1, 1960 had only six weeks to register before being banned forever from federal employ- ment. That circumstance, however, has no bearing on this case.

enacted, the affected persons were "specified" or "easily ascertainable" because their status as Confederacy sympathizers was irreversible. The law punished for conduct already passed; "no one who had served the Confederacy could possibly comply." *MPIRG,* 468 U.S. at 851, 104 S.Ct. 3348; *see also Pierce v. Carskadon,* 83 U.S. (16 Wall) 234, 21 L.Ed. 276 (1872) (striking down as bill of attainder a West Virginia law conditioning access to courts upon an oath like that of *Cummings* and *Garland* ).

*United States v. Lovett,* 328 U.S. 303, 66 S.Ct. 1073, 90 L.Ed. 1252 (1946), the Court's next major attainder case, provides a classic example of specificity. The law at issue barred the government from paying the salaries of three named government employees suspected to be Communist sympathizers. That is the prototypical fixed class; the employees were identified by name.

In *United States v. Brown,* 381 U.S. 437, 85 S.Ct. 1707, 14 L.Ed.2d 484 (1965), the Court voided as a bill of attainder a law that made it a crime for a member of the Communist Party to serve as an officer or employee of a labor union during the time of his membership or for five years afterward. Brown, a Communist, held an officer position in a labor union from 1959 to 1961, when he was criminally charged. As in the prior Supreme Court cases, those affected, Communist Party members, were "easily ascertainable" at the time the law was enacted in 1959. When the statute was passed, it punished Communist Party members for past conduct. As the briefing before the Supreme Court made clear, "[a]t no time between 1959, when the statute was enacted, and 1964 when the five-year period could have expired at its earliest, could Brown, by any 'voluntary alteration of [his] loyalties' or otherwise, have held union office without liability to crimi-

nal prosecution." Brief of Respondent at *52, *Brown,* 381 U.S. 437, 1965 WL 115596 (March 13, 1965) (quoting *American Communications Association v. Douds,* 339 U.S. 382, 414, 70 S.Ct. 674, 94 L.Ed. 925 (1950)). *Cf. MPIRG,* 468 U.S. at 851, 104 S.Ct. 3348 (persons affected by statute denying federal financial aid to students who failed to register for the draft not easily ascertainable because their status was not "irreversible").

Following the lead of the Supreme Court, lower courts have found unconstitutional specification only when the affected parties were named or "easily ascertainable" at the time the statute was enacted. In the most common circumstances, the law has either singled out the targeted group by name, *see, e.g., Consolidated Edison Co. v. Pataki,* 292 F.3d 338, 350 (2d Cir.2002) (finding that a New York statute ordering Consolidated Edison to refund certain costs to customers satisfied specificity requirement); *BellSouth Corp. v. FCC,* 162 F.3d 678, 684 (D.C.Cir.1998) (holding that provision limiting the ability of BellSouth operating companies to provide certain services met specificity requirement, although law was not bill of attainder for other reasons), or described the group "in terms of conduct, which, because it is past conduct, operates only as a designation of particular persons." *Communist Party of the United States v. Subversive Activities Control Board,* 367 U.S. 1, 86, 81 S.Ct. 1357, 6 L.Ed.2d 625 (1961). *See, e.g., Foretich v. United States,* 351 F.3d 1198, 1217 (D.C.Cir.2003) (finding law whose applicability "depends on such a narrow set of circumstances that it applies to no known cases other than the [plaintiffs]" met specificity requirement); *Caudell v. City of Toccoa,* 153 F.Supp.2d 1371, 1379 (N.D.Ga.2001) (holding that law prohibiting city commission member from serving as a hospital board member is sufficiently specific where plaintiff is the

only person in entire state affected and no other person had held both positions in twenty-five years).

Bill of Attainder case law reflects the principle that a law "specifies" the affected group "only if it defines a closed class of persons with some fixed characteristic—a class the entire membership of which could be known (at least in theory) by the legislators at the moment when the law is enacted." Roderick M. Hills, Jr., *Is Amendment 2 Really A Bill of Attainder? Some Questions About Professor Amar's Analysis of Romer*, 95 Mich. L.Rev. 236, 236–37 (1996). In other words, a statute unlawfully specifies under the Bill of Attainder prohibition when it "defines a closed class, a class with a membership that is permanently fixed when the class is defined, from which members can never exit and into which nonmembers can never enter, as a matter of law." *Id.* at 240.

Courts have found the hallmarks of Bill of Attainder specificity to be irreversibility and retrospectivity. A statute that defines affected persons based upon their past conduct creates an irreversible or fixed group. "The singling out of an individual for legislatively prescribed punishment constitutes an attainder whether the individual is called by name or described in terms of conduct which, because it is past conduct, operates only as a designation of particular persons." *Communist Party*, 367 U.S. at 86, 81 S.Ct. 1357 (1961); *see also MPIRG*, 468 U.S. at 847, 104 S.Ct. 3348 (quoting *Communist Party*, 367 U.S. at 87, 81 S.Ct. 1357) ("When past activity serves as 'a point of reference for the ascertainment of particular persons ineluctably designated by the legislature' for punishment the Act may be an attainder."). An "indispensible element of a bill of attainder is its retrospective focus: it defines past conduct as wrongdoing and then imposes punishment on that past con-

duct." *Roe v. Farwell*, 999 F.Supp. 174, 193 (D.Mass.1998); *see also Consolidated Edison Co.*, 292 F.3d at 349 ("The retrospective focus of [the statute] is essential to our determination that the statute is a bill of attainder."); *O'Bradovich v. Village of Tuckahoe*, 325 F.Supp.2d 413, 428 (S.D.N.Y.2004) ("A law is unconstitutional when it penalizes past actions that occurred before its passage and that cannot be undone. . . .").

Conversely, courts have found "specificity" to be lacking in two situations: "when the challenged law is a law of general applicability, and when the law punishes a reversible condition." *O'Bradovich*, 325 F.Supp.2d at 427. Courts have consistently held laws that are prospective and general at the time of enactment to be constitutional. *See Dent v. State of West Virginia*, 129 U.S. 114, 9 S.Ct. 231, 32 L.Ed. 623 (1889) (upholding West Virginia law requiring doctors to obtain a license before practicing); *Palmer v. Clarke*, 408 F.3d 423, 428, 433 (8th Cir.2005) (law "amend[ing] the marital privilege statute by rendering the privilege inapplicable in cases involving crimes of violence" not bill of attainder because "there is no way to determine which individuals were 'ineluctably designated' by [the law] for punishment"); *PTI, Inc. v. Philip Morris Inc.*, 100 F.Supp.2d 1179, 1199 (C.D.Cal.2000) (statute "does not contain the requisite specificity" where "[a]pplication of the statute depends entirely on an entity's prospective choice of conduct."). Indeed, passing general and prospective laws is exactly a legislature's function. *Brown*, 381 U.S. at 446, 85 S.Ct. 1707 (quoting *Fletcher v. Peck*, 10 U.S. 87, 6 Cranch 87, 3 L.Ed. 162 (1810)) ("'It is the peculiar province of the legislature to prescribe general rules for the government of society; the application of those rules to individuals in society would seem to be the duty of other departments.'").

■ Returning to § 3328, it becomes apparent that under the case law, it is not a bill of attainder because it does not meet the specification requirement. The statute became effective on November 8, 1985, and its prohibition applies to men "born after December 31, 1959." Therefore, at the time of its passage, the law did not apply to anyone over the age of twenty-six. There was no closed or specified class at time of its enactment; one could voluntarily enter or exit the affected class on November 8, 1985. The statute's application was "made to turn upon continuingly contemporaneous fact," *MPIRG*, 468 U.S. at 851, 104 S.Ct. 3348 (quoting *Communist Party*, 367 U.S. at 87, 81 S.Ct. 1357). In other words, the statute as enacted was both general and prospective in nature.

## 2. History and Purpose of the Bill of Attainder

The history and purpose of the bill of attainder supports the principle that a bill of attainder must "specify" the affected persons at the time it is enacted. The historical bill of attainder was an act by British Parliament that sentenced a specific person or group to death. *United States v. Brown*, 381 U.S. 437, 441, 85 S.Ct. 1707, 14 L.Ed.2d 484 (1965); *see generally* Note, *The Bounds of Legislative Specification: A Suggested Approach to the Bill of Attainder Clause*, 72 YALE. L.J. 330 (1962) (providing a history of the bill of attainder). It was often used in the sixteenth, seventeenth, and eighteenth centuries to punish those who had attempted the overthrow of the government. *Brown*, 381 U.S. at 441, 85 S.Ct. 1707. Generally, the bill of attainder named the person or persons to whom it applied. Occasionally, however, it simply described them, but it always did so with sufficient specificity effectively to name the persons. *Bounds of Legislative Specification, supra*, at 331 n. 6 (quoting 1699, 10 & 11 Will. 3, c. 13

(pub).) ("An Act for continuing the imprisonment ... for the late horrid conspiracy to assassinate the person of his sacred Majesty").

The Founders rejected this practice when they banned bills of attainder in the Constitution. *See* U.S. Const., Art. I, § 9, cl. 3 ("No bill of attainder ... shall be passed."). Courts and scholars have given two related justifications for this prohibition—separation of powers and the so-called "veil of ignorance."

The Supreme Court discussed separation of powers extensively in *Brown*, 381 U.S. 437, 85 S.Ct. 1707. The Court observed that the Founders believed the legislature was "not so well suited as politically independent judges and juries to the task of ruling upon the blameworthiness, of, and levying appropriate punishment upon, specific persons." 381 U.S. at 445, 85 S.Ct. 1707. When making law, legislators must act generally and prospectively. The judiciary, conversely, "operate[s] retrospectively and specifically in discrete cases and controversies." Akhil Reed Amar, Essay, *Attainder and Amendment 2: Romer's Rightness*, 95 MICH. L.REV. 203, 203 (1996). This institutional distinction bars the legislature from singling out specific people or groups for punishment. The legislature can only create the law; the judiciary determines who has violated it and what the punishment will be. *See Cummings*, 71 U.S. (4 Wall.) at 323 (In enacting a bill of attainder "the legislative body ... assumes ... judicial magistracy; it pronounces upon the guilt of the party, without any of the forms or safeguards of trial."). Thus, the bill of attainder prohibition was meant to prevent "legislative exercise of the judicial function, or more simply-trial by legislature." *Brown*, 381 U.S. at 442, 85 S.Ct. 1707.

Closely related to the separation of powers justification is that of the "veil of ignorance"—that is, "the legislature must prescribe penalties generally and prospectively," without the ability to know exactly who will be affected by the law. Amar, *supra*, at 203. Under a veil of ignorance, legislators can never be sure if or how the law will burden them or their allies, and so must legislate with a degree of impartiality and distance. The bill of attainder removes this "veil" and permits legislators to single out a fixed class. "By using these closed classes, a legislator can ensure that a legislative burden will be imposed only on persons that she dislikes and no one else—that the classification will never inadvertently 'spill over,' as it were, on to political allies." Hills, *supra*, at 241–42.

Refracting § 3328 through the prism of these purposes, it is evident the statute does not offend separation of powers or the "veil of ignorance." On the day of its enactment, Congress had no way of knowing exactly who would fall into the affected class. Since no one would be in violation of the statute until six weeks after it passed, everyone could, in theory, comply.

## III. CONCLUSION

The Defendants have persuaded me that my treatment of "specification" in the January 26, 2009 Memorandum and Order was a "manifest error of law." Surrendering my "former views to a better considered position," *McGrath v. Kristensen,* 340 U.S. 162, 177–78, 71 S.Ct. 224, 95 L.Ed. 173 (1950) (Jackson, J., dissenting), I GRANT the Defendants' motion for reconsideration (Docket No. 52) and direct the Clerk to enter judgment for the Defendants in this matter.