Justice Thomas
delivered the opinion of the Court.
Under the Civil Service Reform Act of 1978 (CSRA), 5 U. S. C. § 1101 et seq., certain federal employees may obtain administrative and judicial review of specified adverse employment actions. The question before us is whether the CSRA provides the exclusive avenue to judicial review when a qualifying employee challenges an adverse employment action by arguing that a federal statute is unconstitutional. We hold that it does.
I
The CSRA “established a comprehensive system for reviewing personnel action taken against federal employees.” United States v. Fausto, 484 U. S. 439, 455 (1988). As relevant here, Subchapter II of Chapter 75 governs review of major adverse actions taken against employees “for such cause as will promote the efficiency of the service.” 5 U. S. C. §§ 7503(a), 7513(a). Employees entitled to review are those in the “competitive service” and “excepted service” who meet certain requirements regarding probationary periods and years of service.[1] § 7511(a)(1). The reviewable *6 agency actions are removal, suspension for more than 14 days, reduction in grade or pay, or furlough for 30 days or less. §7512.
When an employing agency proposes a covered action against a covered employee, the CSRA gives the employee the right to notice, representation by counsel, an opportunity to respond, and a written, reasoned decision from the agency. § 7513(b). If the agency takes final adverse action against the employee, the CSRA gives the employee the right to a hearing and to be represented by an attorney or other representative before the Merit Systems Protection Board (MSPB). §§ 7513(d), 7701(a)(1)-(2). The MSPB is authorized to order relief to prevailing employees, including reinstatement, backpay, and attorney’s fees. §§ 1204(a)(2), 7701(g).
An employee who is dissatisfied with the MSPB’s decision is entitled to judicial review in the United States Court of Appeals for the Federal Circuit. That court “shall review the record and hold unlawful and set aside any agency action, findings, or conclusions” that are “arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,” “obtained without procedures required by law, rule, or regulation having been followed,” or “unsupported by substantial evidence.” §§ 7703(a)(1), (c). The Federal Circuit has “exclusive jurisdiction” over appeals from a final decision of the MSPB. 28 U. S. C. § 1295(a)(9); see also 5 U. S. C. § 7703(b)(1) (judicial review of an MSPB decision “shall be” in the Federal Circuit).
II
Petitioners are former federal competitive service employees who failed to comply with the Military Selective Service *7 Act, 50 U. S. C. App. § 453. That Act requires male citizens and permanent-resident aliens of the United States between the ages of 18 and 26 to register for the Selective Service. Another federal statute, 5 U. S. C. § 3328 (hereinafter Section 3328), bars from employment by an executive agency anyone who has knowingly and willfully failed to register. Pursuant to Section 3328, petitioners were discharged (or allegedly constructively discharged) by respondents, their employing agencies.
Among petitioners, only Michael Elgin appealed his removal to the MSPB. Elgin argued that Section 3328 is an unconstitutional bill of attainder and unconstitutionally discriminates on the basis of sex when combined with the registration requirement of the Military Selective Service Act. The MSPB referred Elgin’s appeal to an Administrative Law Judge (ALJ) for an initial decision.[2] The ALJ dismissed the appeal for lack of jurisdiction, concluding that an employee is not entitled to MSPB review of agency action that is based on an absolute statutory bar to employment. App. to Pet. for Cert. 100a-101a. The ALJ also held that Elgin’s constitutional claims could not “confer jurisdiction” on the MSPB because it “lacks authority to determine the constitutionality of a statute.” Id., at 101a.
Elgin neither petitioned for review by the full MSPB nor appealed to the Federal Circuit. Instead, he joined the other petitioners in filing suit in the United States District Court for the District of Massachusetts, raising the same constitutional challenges to Section 3328 and the Military Selective Service Act. App. 4, 26-28, 29. Petitioners sought equitable relief in the form of a declaratory judgment that the challenged statutes are unconstitutional, an injunction prohibiting enforcement of Section 3328, reinstatement to *8 their former positions, backpay, benefits, and attorney’s fees. Id., at 29-30.
The District Court rejected respondents’ argument that it lacked jurisdiction and denied petitioners’ constitutional claims on the merits. See Elgin v. United States, 697 F. Supp. 2d 187 (Mass. 2010). The District Court held that the CSRA did not preclude it from hearing petitioners’ claims, because the MSPB had no authority to determine the constitutionality of a federal statute. Id., at 193. Hence, the District Court concluded that it retained jurisdiction under the general grant of federal-question jurisdiction in 28 U. S. C. § 1331. 697 F. Supp. 2d, at 194.
The United States Court of Appeals for the First Circuit vacated the judgment and remanded with instructions to dismiss for lack of jurisdiction. See 641 F. 3d 6 (2011). The Court of Appeals held that challenges to a removal are not exempted from the CSRA review scheme simply because the employee argues that the statute authorizing the removal is unconstitutional. Id., at 11-12. According to the Court of Appeals, the CSRA provides a forum—the Federal Circuit— that may adjudicate the constitutionality of a federal statute, and petitioners “were obliged to use it.” Id., at 12-13.
We granted certiorari to decide whether the CSRA precludes district court jurisdiction over petitioners’ claims even though they are constitutional claims for equitable relief. See 565 U. S. 962 (2011). We conclude that it does, and we therefore affirm.
Ill
We begin with the appropriate standard for determining whether a statutory scheme of administrative and judicial review provides the exclusive means of review for constitutional claims. Petitioners argue that even if they may obtain judicial review of their constitutional claims before the Federal Circuit, they are not precluded from pursuing their claims in federal district court. According to petitioners, *9 the general grant of federal-question jurisdiction in 28 U. S. C. § 1331, which gives district courts authority over constitutional claims, remains undisturbed unless Congress explicitly directs otherwise. In support of this argument, petitioners rely on Webster v. Doe, 486 U. S. 592, 603 (1988), which held that “where Congress intends to preclude judicial review of constitutional claims[,] its intent to do so must be clear.” The Webster Court noted that this “heightened showing” was required “to avoid the ‘serious constitutional question’ that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim.” Ibid, (quoting Bowen v. Michigan Academy of Family Physicians, 476 U. S. 667, 681, n. 12 (1986)). Petitioners contend that the CSRA does not meet this standard because it does not expressly bar suits in district court.
Petitioners’ argument overlooks a necessary predicate to the application of Webster’s heightened standard: a statute that purports to “deny any judicial forum for a colorable constitutional claim.” 486 U. S., at 603. Webster’s standard does not apply where Congress simply channels judicial review of a constitutional claim to a particular court. We held as much in Thunder Basin Coal Co. v. Reich, 510 U. S. 200 (1994). In that case, we considered whether a statutory scheme of administrative review followed by judicial review in a federal appellate court precluded district court jurisdiction over a plaintiff’s statutory and constitutional claims. Id., at 206. We noted that the plaintiffs claims could be “meaningfully addressed in the Court of Appeals” and that the case therefore did “not present the ‘serious constitutional question’ that would arise if an agency statute were construed to preclude all judicial review of a constitutional claim.” Id., at 215, and n. 20 (quoting Bowen, supra, at 681, n. 12). Accordingly, we did not require Webster’s “heightened showing,” but instead asked only whether Congress’ intent to preclude district court jurisdiction was “ ‘fairly dis *10 cernible in the statutory scheme.’ ” 510 U. S., at 207 (quoting Block v. Community Nutrition Institute, 467 U. S. 340, 351 (1984)).
Like the statute in Thunder Basin, the CSRA does not foreclose all judicial review of petitioners’ constitutional claims, but merely directs that judicial review shall occur in the Federal Circuit. Moreover, as we explain below, the Federal Circuit is fully capable of providing meaningful review of petitioners’ claims. See infra, at 16-21. Accordingly, the appropriate inquiry is whether it is “fairly discernible” from the CSRA that Congress intended covered employees appealing covered agency actions to proceed exclusively through the statutory review scheme, even in cases in which the employees raise constitutional challenges to federal statutes.
IV
To determine whether it is “fairly discernible” that Congress precluded district court jurisdiction over petitioners’ claims, we examine the CSRA’s text, structure, and purpose. See Thunder Basin, supra, at 207; Fausto, 484 U. S., at 443.
A
This is not the first time we have addressed the impact of the CSRA’s text and structure on the availability of judicial review of a federal employee’s challenge to an employment decision. In Fausto, we considered whether a so-called “nonpreference excepted service employe[e]” could challenge his suspension in the United States Claims Court, even though the CSRA did not then afford him a right to review in the MSPB or the Federal Circuit.[3] Id., at 440-441, 448. Citing “[t]he comprehensive nature of the CSRA, the attention that it gives throughout to the rights of nonprefer-enee excepted service employees, and the fact that it does not include them in provisions for administrative and judicial *11 review contained in Chapter 75,” the Court concluded that “the absence of provision for these employees to obtain judicial review” was a “considered congressional judgment.” Id., at 448. The Court thus found it “fairly discernible” that Congress intended to preclude all judicial review of Fausto’s statutory claims.[4] Id., at 452 (citing Block, supra, at 349).
Just as the CSRA’s “elaborate” framework, 484 U. S., at 443, demonstrates Congress’ intent to entirely foreclose judicial review to employees to whom the CSRA denies statutory review, it similarly indicates that extrastatutory review is not available to those employees to whom the CSRA grants administrative and judicial review. Indeed, in Fausto we expressly assumed that “competitive service employees, who are given review rights by Chapter 75, cannot expand these rights by resort to” judicial review outside of the CSRA scheme. See id., at 450, n. 3. As Fausto explained, the CSRA “prescribes in great detail the protections and remedies applicable to” adverse personnel actions against federal employees. Id., at 443. For example, Sub-chapter II of Chapter 75, the portion of the CSRA relevant to petitioners, specifically enumerates the major adverse actions and employee classifications to which the CSRA’s procedural protections and review provisions apply. 5 U. S. C. §§ 7511, 7512. The subchapter then sets out the procedures due an employee prior to final agency action. § 7513. And, Chapter 77 of the CSRA exhaustively details the system of review before the MSPB and the Federal Circuit. §§ 7701, 7703; see also Fausto, supra, at 449 (emphasizing that the CSRA’s structure evinces “the primacy” of review by the MSPB and the Federal Circuit). Given the painstaking detail with which the CSRA sets out the method for covered *12 employees to obtain review of adverse employment actions, it is fairly discernible that Congress intended to deny such employees an additional avenue of review in district court.
Petitioners do not dispute that they are employees who suffered adverse actions covered by the foregoing provisions of the CSRA. Nor do they contest that the CSRA’s text and structure support implied preclusion of district court jurisdiction, at least as a general matter. Petitioners even acknowledge that the MSPB routinely adjudicates some constitutional claims, such as claims that an agency took adverse employment action in violation of an employee’s First or Fourth Amendment rights, and that these claims must be brought within the CSRA scheme. See Brief for Petitioners 33; Tr. of Oral Arg. 7-11, 15, 21; see also, e. g., Smith v. Department of Transp., 106 MSPR 59, 78-79 (2007) (applying Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty., 391 U. S. 563 (1968), to an employee’s claim that he was suspended in retaliation for the exercise of his First Amendment rights); Garrison v. Department of Justice, 67 MSPR 154 (1995) (considering whether an order directing an employee to submit to a drug test was reasonable under the Fourth Amendment). Nevertheless, petitioners seek to carve out an exception to CSRA exclusivity for facial or as-applied constitutional challenges to federal statutes.
The text and structure of the CSRA, however, provide no support for such an exception. The availability of administrative and judicial review under the CSRA generally turns on the type of civil service employee and adverse employment action at issue. See, e.g., 5 U. S. C. §§ 7511(a)(1) (defining “employee”), 7512 (defining “[ajctions covered”), 7513(d) (providing that “[ajn employee against whom an action is taken under this section is entitled to appeal to the Merit Systems Protection Board”), 7703(a)(1) (providing that “[a]ny employee . . . adversely affected or aggrieved by a final order or decision of the Merit Systems Protection Board may obtain judicial review of the order or decision” in the *13 Federal Circuit). Nothing in the CSRA’s text suggests that its exclusive review scheme is inapplicable simply because a covered employee challenges a covered action on the ground that the statute authorizing that action is unconstitutional. As the Government correctly notes, “[t]he plain language of [the CSRA’s] provisions applies to an employee who challenges his removal on the ground that the statute requiring it is unconstitutional no less than it applies to an employee who challenges his removal on any other ground.” Brief for Respondents 33-34.
In only one situation does the CSRA expressly exempt a covered employee’s appeal of a covered action from Federal Circuit review based on the type of claim at issue. When a covered employee “alleges that a basis for the action was discrimination” prohibited by enumerated federal employment laws, 5 U. S. C. § 7702(a)(1)(B), the CSRA allows the employee to obtain judicial review of an unfavorable MSPB decision by filing a civil action as provided by the applicable employment law. See § 7703(b)(2). Each of the cross-referenced employment laws authorizes an action in federal district court. See 42 U. S. C. § 2000e-5(f); 29 U. S. C. § 633a(c); § 216(b). Title 5 U. S. C. § 7703(b)(2) demonstrates that Congress knew how to provide alternative forums for judicial review based on the nature of an employee’s claim. That Congress declined to include an exemption from Federal Circuit review for challenges to a statute’s constitutionality indicates that Congress intended no such exception.
B
The purpose of the CSRA also supports our conclusion that the statutory review scheme is exclusive, even for employees who bring constitutional challenges to federal statutes. As we have previously explained, the CSRA’s “integrated scheme of administrative and judicial review” for aggrieved federal employees was designed to replace an “‘outdated patchwork of statutes and rules’” that afforded *14 employees the right to challenge employing agency actions in district courts across the country. Fausto, 484 U. S., at 444-445. Such widespread judicial review, which included appeals in all of the Federal Courts of Appeals, produced “wide variations in the kinds of decisions . . . issued on the same or similar matters” and a double layer of judicial review that was “wasteful and irrational.” Id., at 445 (internal quotation marks omitted).
The CSRA’s objective of creating an integrated scheme of review would be seriously undermined if, as petitioners would have it, a covered employee could challenge a covered employment action first in a district court, and then again in one of the courts of appeals, simply by alleging that the statutory authorization for such action is unconstitutional. Such suits would reintroduce the very potential for inconsistent decisionmaking and duplicative judicial review that the CSRA was designed to avoid. Moreover, petitioners’ position would create the possibility of parallel litigation regarding the same agency action before the MSPB and a district court. An employee could challenge the constitutionality of the statute authorizing an agency’s action in district court, but the MSPB would remain the exclusive forum for other types of challenges to the agency’s decision. See Tr. of Oral Arg. 4-7, 9, 15-16.
Petitioners counter that doctrines regarding claim splitting and preclusion would bar parallel suits before the MSPB and the district court. But such doctrines would not invariably eliminate the possibility of simultaneous proceedings, for a tribunal generally has discretion to decide whether to dismiss a suit when a similar suit is pending elsewhere. See 18 C. Wright et al., Federal Practice and Procedure § 4406 (2d ed. 2002 and Supp. 2011). In any event, petitioners point to nothing in the CSRA to support the odd notion that Congress intended to allow employees to pursue constitutional claims in district court at the cost of forgoing other, potentially meritorious claims before the MSPB.
*15 Finally, we note that a jurisdictional rule based on the nature of an employee’s constitutional claim would deprive the aggrieved employee, the MSPB, and the district court of clear guidance about the proper forum for the employee’s claims at the outset of the case. For example, petitioners contend that facial and as-applied constitutional challenges to statutes may be brought in district court, while other constitutional challenges must be heard by the MSPB. See supra, at 12; n. 5, infra. But, as we explain below, that line is hazy at best and incoherent at worst. See ibid. The dissent’s approach fares no better. The dissent carves out for district court adjudication only facial constitutional challenges to statutes, but we have previously stated that “the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge.” Citizens United v. Federal Election Comm’n, 558 U. S. 310, 331 (2010). By contrast, a jurisdictional rule based on the type of employee and adverse agency action at issue does not involve such amorphous distinctions. Accordingly, we conclude that the better interpretation of the CSRA is that its exclusivity does not turn on the constitutional nature of an employee’s claim, but rather on the type of the employee and the challenged employment action.
y
Petitioners raise three additional factors in arguing that their claims are not the type that Congress intended to be reviewed within the CSRA scheme. Specifically, petitioners invoke our “presum[ption] that Congress does not intend to limit [district court] jurisdiction if ‘a finding of preclusion could foreclose all meaningful judicial review’; if the suit is ‘wholly collateral to a statute’s review provisions’; and if the claims are ‘outside the agency’s expertise.’” Free Enterprise Fund v. Public Company Accounting Oversight Bd., 561 U. S. 477, 489 (2010) (quoting Thunder Basin, 510 U. S., *16 at 212-213). Contrary to petitioners’ suggestion, none of those characteristics are present here.
A
First, petitioners argue that the CSRA review scheme provides no meaningful review of their claims because the MSPB lacks authority to declare a federal statute unconstitutional. Petitioners are correct that the MSPB has repeatedly refused to pass upon the constitutionality of legislation. See, e. g., Malone v. Department of Justice, 13 M. S. P. B. 81, 83 (1983) (“[I]t is well settled that administrative agencies are without authority to determine the constitutionality of statutes”). This Court has also stated that “adjudication of the constitutionality of congressional enactments has generally been thought beyond the jurisdiction of administrative agencies.” Thunder Basin, 510 U. S., at 215 (internal quotation marks and brackets omitted).[5]
*17 We need not, and do not, decide whether the MSPB’s view of its power is correct, or whether the oft-stated principle that agencies cannot declare a statute unconstitutional is truly a matter of jurisdiction. See ibid. (describing this rule as “not mandatory”). In Thunder Basin, we held that Congress’ intent to preclude district court jurisdiction was fairly discernible in the statutory scheme “[e]ven if” the administrative body could not decide the constitutionality of a federal law. Ibid. That issue, we reasoned, could be “meaningfully addressed in the Court of Appeals” that Congress had authorized to conduct judicial review. Ibid.[6] Likewise, the CSRA provides review in the Federal Circuit, an Article III court fully competent to adjudicate petitioners’ claims that Section 3328 and the Military Selective Service Act’s registration requirement are unconstitutional.
Petitioners insist, however, that the Federal Circuit cannot decide their constitutional claims either. Emphasizing the Federal Circuit’s holdings that its jurisdiction over employee appeals is coextensive with the MSPB’s jurisdiction, petitioners argue that the Federal Circuit likewise lacks jurisdiction *18 to decide their challenge to the constitutionality of a federal statute. Petitioners are incorrect.
As we have explained, the CSRA makes MSPB jurisdiction over an appeal dependent only on the nature of the employee and the employment action at issue. See supra, at 5-6, 12-13; see also 5 CFR § 1201.3(a) (stating that “[t]he Board has jurisdiction over appeals from agency actions” and enumerating covered actions); Todd v. MSPB, 55 F. 3d 1574, 1576 (CA Fed. 1995) (explaining that the employee “has the burden of establishing that she and the action she seeks to appeal [are] within the [MSPB’s] jurisdiction”). Accordingly, as the cases cited by petitioners demonstrate, the Federal Circuit has questioned its jurisdiction when an employee appeals from a type of adverse action over which the MSPB lacked jurisdiction.[7] But the Federal Circuit has never held, in an appeal from agency action within the MSPB’s jurisdiction, that its authority to decide particular legal questions is derivative of the MSPB’s authority. To the contrary, in Briggs v. MSPB, 331 F. 3d 1307, 1312-1313 (2003), the Federal Circuit concluded that it could determine the constitutionality of a statute upon which an employee’s removal was based, notwithstanding the MSPB’s professed lack of authority to decide the question.[8]
*19 Petitioners next contend that even if the Federal Circuit could consider their claims in the first instance, resolution of the claims requires a factual record that neither the MSPB (because it lacks authority to decide the legal question) nor the Federal Circuit (because it is an appellate court) can create. To the contrary, we think the CSRA review scheme fully accommodates an employee’s potential need to establish facts relevant to his constitutional challenge to a federal statute. Even without factfinding capabilities, the Federal Circuit may take judicial notice of facts relevant to the constitutional question. See, e. g., Rothe Development Corp. v. Department of Defense, 545 F. 3d 1023, 1045-1046 (CA Fed. 2008) (judicially noticing facts relevant to equal protection challenge). And, if resolution of a constitutional claim requires the development of facts beyond those that the Federal Circuit may judicially notice, the CSRA empowers the MSPB to take evidence and find facts for Federal Circuit review. See 5 U. S. C. §§ 1204(b)(1)-(2) (providing that the MSPB may administer oaths, examine witnesses, take depositions, issue interrogatories, subpoena testimony and documents, and otherwise receive evidence when a covered employee appeals a covered adverse employment action). Unlike petitioners, we see nothing extraordinary in a statutory scheme that vests reviewable factfinding authority in a non-Article III entity that has jurisdiction over an action but cannot finally decide the legal question to which the facts pertain. Congress has authorized magistrate judges, for example, to conduct evidentiary hearings and make findings of fact relevant to dispositive pretrial motions, although they are powerless to issue a final ruling on such motions. See 28 U. S. C. §§ 636(b)(1)(A)-(B); United States v. Raddatz, 447 U. S. 667, 673 (1980).[9]
*20 Petitioners nonetheless insist that the MSPB will never reach the factfinding stage in an appeal challenging the constitutionality of a federal statute, pointing to the ALJ’s dismissal for lack of jurisdiction in petitioner Elgin’s case. Again, petitioners are incorrect. When a covered employee appeals a covered adverse action, the CSRA grants the MSPB jurisdiction over the appeal. See supra, at 18. If the employee attacks the adverse action on the ground that a statute is unconstitutional, the MSPB may determine that it lacks authority to decide that particular issue; but absent another infirmity in the adverse action, the MSPB will affirm the employing agency’s decision rather than dismiss the appeal. See, e. g., Briggs, supra, at 1311. The Federal Circuit can then review the MSPB decision, including any factual record developed by the MSPB in the course of its decision on the merits.
Contrary to petitioners’ suggestion, Elgin’s case does not illustrate that the MSPB will invariably dismiss an appeal challenging the' constitutionality of a federal statute before reaching the factfinding stage. The ALJ dismissed Elgin’s case on the threshold jurisdictional ground that he was not an “employee” with a right to appeal to the MSPB because his employment was absolutely barred by statute. See App. to Pet. for Cert. 100a-101a. The Government conceded before the First Circuit that this jurisdictional argument was incorrect, see Brief for Respondents 10, and the Court of *21 Appeals agreed, see 641 F. 3d, at 10-11. The parties do not raise that issue here, and we do not address it. What matters for present purposes is that the particular circumstances of Elgin’s case do not demonstrate that the MSPB will dismiss an appeal that is otherwise within its jurisdiction merely because it lacks the authority to decide a particular claim.[10]
In sum, the CSRA grants the MSPB and the Federal Circuit jurisdiction over petitioners’ appeal because they are covered employees challenging a covered adverse employment action. Within the CSRA review scheme, the Federal Circuit has authority to consider and decide petitioners’ constitutional claims. To the extent such challenges require factual development, the CSRA equips the MSPB with tools to create the necessary record. Thus, petitioners’ constitutional claims can receive meaningful review within the CSRA scheme.[11]
B
Petitioners next contend that the CSRA does not preclude district court jurisdiction over their claims because they are “wholly collateral” to the CSRA scheme. According to peti *22 tioners, their bill-of-attainder and sex discrimination claims “have nothing to do with the types of day-to-day personnel actions adjudicated by the MSPB,” Brief for Petitioners 29, and petitioners “are not seeking the CSRA’s ‘protections and remedies/ ” Reply Brief 3. We disagree.
As evidenced by their district court complaint, petitioners’ constitutional claims are the vehicle by which they seek to reverse the removal decisions, to return to federal employment, and to receive the compensation they would have earned but for the adverse employment action. See App. 29-30. A challenge to removal is precisely the type of personnel action regularly adjudicated by the MSPB and the Federal Circuit within the CSRA scheme. Likewise, reinstatement, backpay, and attorney’s fees are precisely the kinds of relief that the CSRA empowers the MSPB and the Federal Circuit to provide. See supra, at 6; see also Heckler v. Ringer, 466 U. S. 602, 614 (1984) (holding that plaintiffs’ claims were not wholly collateral to a statutory scheme of administrative and judicial review of Medicare payment decisions, where plaintiffs’ constitutional and statutory challenge to an agency’s procedure for reaching payment decisions was “at bottom” an attempt to reverse the agency’s decision to deny payment). Far from a suit wholly collateral to the CSRA scheme, the case before us is a challenge to CSRA-covered employment action brought by CSRA-covered employees requesting relief that the CSRA routinely affords.
C
Relatedly, petitioners argue that their constitutional claims are not the sort that Congress intended to channel through the MSPB because they are outside the MSPB’s expertise. But petitioners overlook the many threshold questions that may accompany a constitutional claim and to which the MSPB can apply its expertise. Of particular relevance here, preliminary questions unique to the employment context may obviate the need to address the constitutional *23 challenge. For example, petitioner Henry Tucker asserts that his resignation amounted to a constructive discharge. That issue falls squarely within the MSPB’s expertise, and its resolution against Tucker would avoid the need to reach his constitutional claims. In addition, the challenged statute may be one that the MSPB regularly construes, and its statutory interpretation could alleviate constitutional concerns. Or, an employee’s appeal may involve other statutory or constitutional claims that the MSPB routinely considers, in addition to a constitutional challenge to a federal statute. The MSPB’s resolution of those claims in the employee’s favor might fully dispose of the case. . Thus, because the MSPB’s expertise can otherwise be “brought to bear” on employee appeals that challenge the constitutionality of a statute, we see no reason to conclude that Congress intended to exempt such claims from exclusive review before the MSPB and the Federal Circuit. See Thunder Basin, 510 U. S., at 214-215 (concluding that, where administrative Commission’s expertise “could be brought to bear” on appeal, Commission’s exclusive review of alleged statutory violation was appropriate despite its lack of expertise in interpreting a particular statute (internal quotation marks and brackets omitted)).
* * *
For the foregoing reasons, we conclude that it is fairly discernible that the CSR.A review scheme was intended to preclude district court jurisdiction over petitioners’ claims. The judgment of the Court of Appeals is affirmed.

It is so ordered.

 The CSRA divides civil service employees into three main categories. Fausto, 484 U. S., at 441, n. 1. “Senior Executive Service” employees occupy high-level positions in the Executive Branch but are not required to be appointed by the President and confirmed by the Senate. 5 U. S. C. §3131(2). “[C]ompetitive service” employees—the relevant category for purposes of this case—are all other Executive Branch employees whose nomination by the President and confirmation by the Senate are not required and who are not specifically excepted from the competitive service by statute. § 2102(a)(1). The competitive service also includes *6 employees in other branches of the Federal Government and in the District of Columbia government who are specifically included by statute. §§ 2102(a)(2)—(3). Finally, “excepted service” employees are employees who are not in the Senior Executive Service or in the competitive service. § 2103.

 See § 7701(b)(1) (authorizing referral of MSPB appeals to an ALJ); 5 CFR §§ 1201.111-1201.114 (2011) (detailing procedures for an initial decision by an ALJ and review by the MSPB).

 Certain veterans and their close relatives are considered “preference eligible” civil service employees. Fausto, 484 U. S., at 441, n. 1.

 Although Fausto interpreted the CSRA to entirely foreclose judicial review, the Court had no need to apply a heightened standard like that applied in Webster v. Doe, 486 U. S. 592 (1988), because Fausto did not press any constitutional claims.

 According to petitioners, the MSPB can decide claims that an agency violated an employee’s First or Fourth Amendment rights (and those claims consequently must be brought within the CSRA scheme), supra, at 12, because such claims allege only that an agency “acted in an unconstitutional manner” and do not challenge the constitutionality of a federal statute either facially or as applied. See Tr. of Oral Arg. 10, 21. That distinction is dubious at best. Agencies are created by and act pursuant to statutes. Thus, unless an action is beyond the scope of the agency’s statutory authority, an employee’s claim that the agency “acted in an unconstitutional manner” will generally be a claim that the statute authorizing the agency action was unconstitutionally applied to him. See, e. g., Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty., 391 U. S. 563, 565 (1968) (holding that the statute authorizing a government employee’s termination was unconstitutional as applied under the First and Fourteenth Amendments where the employee was fired because of his speech). In any event, the curious line that petitioners draw only highlights the weakness of their position, for it certainly is not “fairly discernible” from the CSRA’s text, structure, or purpose that the statutory review scheme is exclusive for so-called “unconstitutional manner” claims but not for facial or as-applied constitutional challenges to statutes. See supra, at 11-14.

 The dissent misreads Thunder Basin. The dissent contends that the “heart of the preclusion analysis” in Thunder Basin involved statutory claims reviewable by the administrative body and that the “only constitutional issue” was decided by this Court “ ‘not on preclusion grounds but on the merits.’” Post, at 32 (opinion of Alito, J.) (quoting 510 U. S., at 219 (Scalia, J., concurring in part and concurring in judgment)). To be sure, the Thunder Basin Court did decide the merits of the petitioner’s “second constitutional challenge,” namely whether the Court’s finding of preclusion was itself unconstitutional. See id., at 219-221, and n.; see also id., at 216 (describing this “alternative” argument). But the petitioner’s suit also included another constitutional claim: a due process challenge to a statute that permitted a regulatory agency, before a hearing, to immediately fine the petitioner for noncompliance with the statute. See Brief for Petitioner in Thunder Basin Coal Co. v. Reich, O. T. 1993, No. 92-896, p. 13. The Court expressly found that the statutory review scheme precluded district court jurisdiction over that constitutional claim. See 510 U. S., at 214-216.

 See Schmittling v. Department of Army, 219 F. 3d 1332, 1336 (CA Fed. 2000) (remanding for MSPB to determine if employee suffered a prohibited personnel action within the scope of its jurisdiction); Perez v. MSPB, 931 F. 2d 853, 855 (CA Fed. 1991) (action against employee was not suspension within MSPB’s jurisdiction); Manning v. MSPB, 742 F. 2d 1424, 1425-1427 (CA Fed. 1984) (reassignment of employee was not an adverse action within MSPB’s jurisdiction); Rosano v. Department of Navy, 699 F. 2d 1315 (CA Fed. 1983) (refusal to prorate employee’s health insurance premiums was not an adverse action within MSPB’s jurisdiction).

 It is not unusual for an appellate court reviewing the decision of an administrative agency to consider a constitutional challenge to a federal statute that the agency concluded it lacked authority to decide. See, e. g., Preseault v. ICC, 853 F. 2d 145, 148-149 (CA2 1988) (provision of the National Trails System Act Amendments of 1983), aff’d on other grounds, 494 U. S. 1 (1990); Reid v. Engen, 765 F. 2d 1457, 1460-1461 (CA9 1985) (provision of the Federal Aviation Act of 1958); Chadha v. INS, 634 F. 2d *19 408, 411, 413 (CA9 1980) (provision of the Immigration and Nationality-Act), aff’d, 462 U. S. 919 (1983).

 The dissent argues that the MSPB may struggle to determine what facts are relevant to the constitutional question, given that it will not decide the claim. See post, at 33. But the MSPB’s professed lack of au *20 thority to declare a statute unconstitutional does not mean that the MSPB cannot identify the legal principles that govern the constitutional analysis and thus the scope of necessary development of the factual record. The MSPB routinely identifies the relevant constitutional framework from federal-court decisions when deciding other constitutional claims. See supra, at 12 (citing First and Fourth Amendment cases); see also, e. g., Fitzgerald v. Department of Defense, 80 MSPR 1, 14-15 (1998) (analyzing a claim under the Due Process Clauses of the Fifth and Fourteenth Amendments). We therefore see little reason to credit the dissent’s prediction that our holding will result in a complicated back and forth between a befuddled MSPB and the Federal Circuit.

 Before this Court, the Government again conceded the error of its argument that Elgin is not an “employee” within the MSPB’s jurisdiction and indicated that it would support a motion by Elgin to reopen his case before the MSPB. See Tr. of Oral Arg. 32.

 The dissent cites McNary v. Haitian Refugee Center, Inc., 498 U. S. 479 (1991), for the “basic principle,” 'post, at 30, that preclusion cannot be inferred when “ ‘the administrative appeals process does not address the kind of . . . constitutional claims’ at issue,” ibid. (quoting McNary, 498 U. S., at 493). But that statement from McNary was not a reference to an administrative body’s inability to decide a constitutional claim. Rather, McNary was addressing a statutory review scheme that provided no opportunity for the plaintiffs to develop a factual record relevant to their constitutional claims before the administrative body and then restricted judicial review to the administrative record created in the first instance. Ibid. As we have explained, the CSRA review process is not similarly limited. See supra, at 19.