# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued January 17, 2013

Decided July 23, 2013
Unsealed July 30, 2013

No. 11-1447

JOSE LACSON,
PETITIONER

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY AND
TRANSPORTATION SECURITY ADMINISTRATION,
RESPONDENTS

---

On Petition for Review of an Order Of
the Transportation Security Administration

---

*Lawrence Berger* argued the cause and filed the briefs for petitioner.

*Edward Himmelfarb*, Attorney, U.S. Department of Justice, argued the cause for respondents. With him on the briefs were *Stuart F. Delery*, Acting Assistant Attorney General, and *Mark B. Stern* and *Sharon Swingle*, Attorneys.

Before: GARLAND, *Chief Judge*, BROWN, *Circuit Judge*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* GARLAND.

GARLAND, *Chief Judge*:  Like many people, Jose Lacson posted things online that he should not have.  The problem is that, unlike most people, Lacson was a Federal Air Marshal.  And the things he posted did not concern relationships gone awry or parties that he should have avoided.  Instead, he wrote about the number of air marshals the Transportation Security Administration (TSA) had hired in recent years, the locations of their assignments, and the rates of attrition at various TSA field offices.  Upon discovering Lacson's online pastime, TSA determined that Lacson had disclosed Sensitive Security Information and fired him.

Lacson asks us to set aside TSA's order by invoking another time-honored online tradition:  he claims that he made it all up.  That is, he maintains that the facts he posted were not true and hence did not really disclose sensitive information.  Unfortunately for Lacson, determining the facts is generally the agency's responsibility, not ours.  And because substantial evidence supports TSA's determination that three of the four postings at issue were true, we affirm the bulk of the agency's order.  However, there is no evidence -- substantial or otherwise -- to support TSA's determination regarding the fourth posting.  We therefore set that determination aside.

I

Many transportation security failures came to light after the 9/11 terrorist attacks, including the revelation that the federal government employed only 33 armed and trained Federal Air Marshals.  *See* THE 9/11 COMMISSION REPORT: FINAL REPORT OF THE NAT'L COMM'N ON TERRORIST ATTACKS UPON THE UNITED STATES, at 85 (2004).  Congress responded by enacting the Aviation and Transportation Security Act, which dramatically expanded the scope of the Federal Air Marshal program and placed it under the control of a new agency, the

TSA. Pub. L. No. 107-71, § 105(a), 115 Stat. 597, 606-07 (2001) (codified as amended at 49 U.S.C. § 44917). The following year, Congress passed the Homeland Security Act of 2002, which (among many other things) enlarged TSA's authority to shield information from disclosure when it determined the release of that information would be "detrimental to the security of transportation." Pub. L. No. 107-296, § 1601(b), 116 Stat. 2135, 2312 (codified as amended at 49 U.S.C. § 114(r)). TSA thereafter promulgated regulations defining Sensitive Security Information (SSI) to include "[i]nformation concerning the deployments, numbers and operations of . . . Federal Air Marshals," 49 C.F.R. § 1520.5(b)(8)(ii), and providing that any unauthorized release of such information by federal employees could be grounds for "appropriate personnel actions," *id.* § 1520.17.

TSA hired Jose Lacson as a Federal Air Marshal in 2002. He worked out of the agency's Miami field office for the next eight years. Starting in 2005, Lacson habitually posted on the online forum Officer.com, using the screen name "INTHEAIRCOP." He openly identified himself on the forum as a Federal Air Marshal and used a Federal Air Marshal badge as his avatar. Some of his posts contained musings on life as an air marshal, as well as banter with other forum participants. Other posts discussed TSA's hiring practices. In particular, several posts written in 2010 purported to reveal the number of air marshals TSA had hired in recent years, the locations of their assignments, and the rates of attrition at various field offices.

TSA discovered these posts in June 2010 and traced them to Lacson. Lacson admitted that he was indeed "INTHEAIRCOP." He swore, however, that many of his posts -- including the detailed figures concerning air marshal staffing -- were false. Lacson denied that he knew or even had access to the true numbers, locations, or attrition rates of his colleagues.

TSA agents conducted a follow-up investigation and concluded that much of the staffing information that Lacson had disclosed was, in fact, true. Lacson's supervisor subsequently proposed that Lacson be terminated. He listed three grounds: that Lacson had released SSI; that Lacson had inappropriately used government computers to write the posts; and that Lacson had repeatedly made inappropriate statements to other Officer.com forum participants. After Lacson was given an opportunity to respond, the agency made Lacson's termination final on May 31, 2011.

Lacson lodged two appeals. He appealed his termination to the Merit Systems Protection Board (MSPB), and he appealed the determination that he had released SSI to the Chief of TSA's SSI Program. The Chief reached a decision first, issuing an order that affirmed the conclusion that four of Lacson's posts contained SSI as defined in 49 C.F.R. § 1520.5(b)(8)(ii). *See* Final Order on Sensitive Security Information in connection with *Lacson v. Dep't of Homeland Sec.*, No. AT-0752-11-0765-I-1, at 1-2 (T.S.A. Sept. 20, 2011) (J.A. 4-5) ("SSI Order"). Lacson then sought a dismissal without prejudice of his MSPB appeal so that he could seek review of the SSI Order in federal court. The MSPB granted his request, *see Lacson v. Dep't of Homeland Sec.*, No. AT-0752-11-0765-I-1, at 2-3 (M.S.P.B. Sept. 23, 2011) (J.A. 42-43), and Lacson filed a petition for review of the SSI Order in this court, pursuant to 49 U.S.C. § 46110.

II

The parties agree that we have jurisdiction over this appeal. In support, they cite 49 U.S.C. § 46110, which provides:

> (a) . . . [A] person disclosing a substantial interest in an
> order issued by . . . the Under Secretary of

Transportation for Security with respect to security duties and powers designated to be carried out by the Under Secretary[1] . . . in whole or in part under . . . subsection (l) or [(r)] of section 114[2] may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business. . . .

. . .

(c) When the petition is sent to the . . . Under Secretary, . . . the court has exclusive jurisdiction to affirm, amend, modify, or set aside any part of the order . . . .

---

[1]The TSA Administrator is the Under Secretary of Transportation for Security, *see* 49 U.S.C. § 114(b)(1), and has delegated the authority to issue certain 49 U.S.C. § 114(r) orders to the Chief of TSA's SSI Program, *see* SSI Order at 1.

[2]The unaltered text of § 46110(a) actually refers to orders concerning duties or powers under "subsection (l) or *(s)* of section 114." 49 U.S.C. § 46110(a) (emphasis added). Since those words were added to § 46110(a) in 2003, *see* Vision 100 -- Century of Aviation Reauthorization Act, Pub. L. No. 108-176, § 228, 117 Stat. 2490, 2532 (2003), subsection (s) of section 114 has been renamed subsection (r) due to the deletion of a preceding subsection, *see* Consolidated Appropriations Act, 2008, Pub. L. No. 110-161, § 568, 121 Stat. 1844, 2092 (2007). Because there is no indication that Congress intended this technical change to affect the scope of § 46110, we agree with both parties that the failure to replace the words "subsection . . . (s)" with "subsection . . . (r)" was a scrivener's error. *Cf. Am. Petroleum Inst. v. SEC*, 714 F.3d 1329, 1336-37 (D.C. Cir. 2013); *Appalachian Power Co. v. EPA*, 249 F.3d 1032, 1040-44 (D.C. Cir. 2001).

*Id.* § 46110.

As the parties correctly observe, TSA issued the SSI Order by invoking its security duties and powers under 49 U.S.C. § 114(r), one of the subsections specifically referenced in § 46110(a). *See* SSI Order at 1. And Lacson clearly "disclos[es] a substantial interest" in the SSI Order because it served as a predicate for his termination. 49 U.S.C. § 46110(a). Thus, both Lacson and TSA conclude that § 46110 gives us jurisdiction over this petition for review. *See* Lacson Supp'l Br. 5; TSA Supp'l Br. 2-3.

Because the question relates to our jurisdiction to hear the case, we are obligated to conduct an independent inquiry, notwithstanding the parties' agreement. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998).[3] Even so, the logic of their position is persuasive, and in the end we agree with it. But the question is complicated by the fact that the MSPB and the United States Court of Appeals for the Federal Circuit indisputably have exclusive jurisdiction to review TSA's decision to terminate Lacson. 49 U.S.C. §§ 114(n), 40122(g)(3), (h); 28 U.S.C. § 1295(a)(9); *see Elgin v. Dep't of Treasury*, 132 S. Ct. 2126, 2131 (2012).

As aficionados of our MSPB jurisprudence will recognize, federal employees are ordinarily not permitted to split a challenge to an adverse personnel action between the MSPB and a federal district court or regional court of appeals. Rather, the Civil Service Reform Act of 1978 (CSRA), 5 U.S.C. §§ 1101 *et seq.*, generally requires employees to bring such claims first in an action before the MSPB and thereafter to the Federal Circuit.

---

[3]At our request, both parties filed supplemental briefs on this question prior to oral argument.

*See* 5 U.S.C. §§ 1204, 7701, 7703(b)(1). As the Supreme Court explained in its foundational opinion on the subject, a "structural element [of the CSRA] is the primacy of the MSPB for administrative resolution of disputes over adverse personnel action, and the primacy of the United States Court of Appeals for the Federal Circuit for judicial review." *United States v. Fausto*, 484 U.S. 439, 449 (1988) (citations omitted).

We recognize that Lacson is not invoking our jurisdiction to review the adverse personnel action against him (*i.e.*, his termination), but rather the order finding that his posts contained Sensitive Security Information. Yet, a number of cases in recent years have extended the logic of *Fausto* beyond challenges to adverse personnel actions themselves. In *Fornaro v. James*, a putative class of retired law enforcement officers asked the U.S. District Court for the District of Columbia to review, under the Administrative Procedure Act (APA), an Office of Personnel Management (OPM) policy that had resulted in reduced annuity payments to retirees. 416 F.3d 63, 65-66 (D.C. Cir. 2005).[4] The plaintiffs conceded that the MSPB and the Federal Circuit had exclusive jurisdiction to review their individual benefits determinations, but they argued that this did not preclude their bringing "what they contend[ed was] a collateral, systemwide challenge to OPM policy" by employing the APA's waiver of

---

[4]The benefits determination at issue in *Fornaro* was technically subject to the Civil Service Retirement Act, 5 U.S.C. §§ 8331 *et seq.*, a statute that predates the Civil Service Reform Act by several decades. *See Lindahl v. OPM*, 470 U.S. 768, 771-74 (1985) (recounting history). But the Civil Service Reform Act made benefits determinations under the Retirement Act subject to essentially the same regime of MSPB exclusivity as personnel actions, *see id.* at 773-74, and we have not distinguished between those statutes for jurisdictional purposes, *see Fornaro*, 416 F.3d at 66-67 (discussing Retirement Act and CSRA cases interchangeably, and relying on *Fausto*).

sovereign immunity. *Id.* at 67; *see* 5 U.S.C. § 702. We disagreed. As we explained, exercising jurisdiction over the plaintiffs' systemwide challenge via the APA "would plainly undermine the whole point of channeling review of benefits determinations to the MSPB," as it would permit the district court (and this court on appeal), rather than the MSPB, to "decide the merits of the plaintiffs' claims for benefits." *Id.* at 68. Accordingly, we affirmed dismissal of the action for lack of jurisdiction.

We repeated this approach in *Nyunt v. Chairman, Broadcasting Board of Governors*, 589 F.3d 445 (D.C. Cir. 2009). There, a prospective employee asked the district court to invalidate, under the APA, an agency policy that had resulted in his non-selection for a position on the Broadcasting Board of Governors, a personnel action that could normally be challenged only through the CSRA. *See id.* at 447-48. Just as in *Fornaro*, we rejected the claim. A prospective employee may not "'circumvent'" the CSRA process by bringing an APA challenge in district court, we said, whether in the form of "a 'systemwide challenge' to an agency policy interpreting a statute" or as a challenge to "the implementation of such a policy in a particular case." *Id.* at 449 (quoting *Grosdidier v. Chairman, Broad. Bd. of Governors*, 560 F.3d 495, 497 (D.C. Cir. 2009), and *Fornaro*, 416 F.3d at 67). Quoting yet another of our cases in this line, we repeated that, "'except where Congress specifies otherwise, the Civil Service Reform Act is the proper statutory vehicle for covered federal employees to challenge personnel actions by their employers.'" *Nyunt*, 589 F.3d at 448 (quoting *Grosdidier*, 560 F.3d at 495-96); *see Grosdidier*, 560 F.3d at 497 ("As our Court has emphasized, the CSRA is comprehensive and exclusive. Federal employees may not circumvent the Act's requirements and limitations by resorting to the catchall APA to challenge agency employment actions.").

Two Terms ago, the Supreme Court echoed and amplified the approach taken in these cases. In *Elgin v. Department of Treasury*, discharged federal employees sought to bring a facial constitutional challenge against the statute that had authorized their removal. 132 S. Ct. at 2131-32. Reasoning that their challenge was "'wholly collateral' to the CSRA scheme" and had "'nothing to do with the types of day-to-day personnel actions adjudicated by the MSPB,'" the plaintiffs argued that they could sue in federal district court under the general grant of federal-question jurisdiction in 28 U.S.C. § 1331. *Elgin*, 132 S. Ct. at 2139; *see id.* at 2131. The Court was unconvinced. It explained that the plaintiffs' constitutional challenge was nothing more than "the vehicle by which they seek to reverse the removal decisions." *Id.* at 2139. As such, their exclusive avenue to judicial review was through the MSPB to the Federal Circuit. *Id.* at 2134, 2140.

Lacson's petition for review has much in common with these failed lawsuits. Like the agency policies at issue in *Fornaro* and *Nyunt*, and the statute at issue in *Elgin*, the SSI Order -- which held that the facts Lacson disclosed constituted Sensitive Security Information -- supplies much of the legal basis for TSA's adverse personnel action against Lacson. Like the claimants in those cases, Lacson asks us to overturn the SSI Order in order to reverse his termination. *See* Lacson Br. at 1. And as in those suits, a favorable decision would effectively decide much of the merits of Lacson's claim before the MSPB.

Lacson and the government distinguish this case from *Fausto*, *Fornaro*, *Nyunt*, and *Elgin* primarily on the ground that 49 U.S.C. § 46110 grants us jurisdiction over Lacson's petition. But the fact that Lacson can invoke a statutory basis for jurisdiction is not itself a distinction. Just as Lacson invokes § 46110, the claimants in *Fornaro* and *Nyunt* invoked a review provision of the APA, 5 U.S.C. § 702, coupled with the general

federal-question jurisdictional provision, 28 U.S.C. § 1331. The plaintiffs in *Elgin* similarly invoked § 1331. And the plaintiff in *Fausto* invoked "the Claims Court review traditionally available under the Tucker Act, 28 U.S.C. § 1491, based on the Back Pay Act," 5 U.S.C. § 5596. *Fausto*, 484 U.S. at 443.

To draw a persuasive distinction, then, there must be something special about § 46110's grant of jurisdiction. And we think there is. Indeed, there are several features that make § 46110 different and authorize us to assume jurisdiction over Lacson's petition.

First, the cases in which appeals were confined to the MSPB and Federal Circuit involved attempts to use quite general statutory review provisions to reach other federal courts. As the Supreme Court explained in *Elgin*, the CSRA establishes an "elaborate" and "painstaking[ly] detail[ed]" scheme for bringing employment actions before the MSPB and the Federal Circuit. 132 S. Ct. at 2133-34. And as this court and the Supreme Court have concluded, it is unlikely that Congress intended to "'allow an employee to circumvent th[e] detailed scheme governing federal employer-employee relations by suing under the *more general* APA,'" *Fornaro*, 416 F.3d at 67 (quoting *Harrison v. Bowen*, 815 F.2d 1505, 1516 n.25 (D.C. Cir. 1987)) (emphasis added), or "under the *general grant* of federal-question jurisdiction in 28 U.S.C. § 1331," *Elgin*, 132 S. Ct. at 2131 (emphasis added); *see id.* at 2134.

Section 46110, by contrast, does not suffer from the defect of generality. It is not a "catchall" like the APA. *Grosdidier*, 560 F.3d at 497. Rather, it specifically addresses the type of order at issue here. It gives this court (and the other regional courts of appeals) authority to review orders issued "in whole or in part under . . . subsection . . . [(r)] of section 114." 49 U.S.C. § 46110(a); *see id.* § 46110(c). Moreover, because the statute is

so narrowly drawn, we need not worry that hearing Lacson's case would permit employees to "circumvent the [CSRA's] requirements and limitations" in a vast number of cases that would otherwise go to the MSPB. *Grosdidier*, 560 F.3d at 497; *see Elgin*, 132 S. Ct. at 2135; *Fausto*, 484 U.S. at 449-51; *Fornaro*, 416 F.3d at 68-69. The rule in this Circuit is that "*except where Congress specifies otherwise*, the Civil Service Reform Act is the proper statutory vehicle for covered federal employees to challenge personnel actions by their employers." *Nyunt*, 589 F.3d at 448 (quoting *Grosdidier*, 560 F.3d at 495-69) (emphasis added). Section 46110 falls comfortably within that exception. (And, of course, Lacson is not challenging the personnel action in this court.)

Second, it is significant that § 46110's grant of jurisdiction is express, for "[w]hen Congress wants to preserve remedies outside the CSRA, it does so expressly." *Nyunt*, 589 F.3d at 448; *see Elgin*, 132 S. Ct. at 2134. In *Fausto*, the Supreme Court refused to recognize independent federal court jurisdiction to hear employee claims under the Back Pay Act in part because that statute said nothing about jurisdiction. *See* 484 U.S. at 453-54. Lower courts had merely inferred such jurisdiction through "implication" and "judicial interpretation," and implication was not enough to overcome the "comprehensive and integrated review scheme of the CSRA." *Id.* Here, however, it is clear that Congress intended § 46110 to be an independent source of federal court jurisdiction. The section uses the word "jurisdiction," 49 U.S.C. § 46110(c), and has for decades been understood as a jurisdictional grant, *see, e.g.*, *City of Rochester v. Bond*, 603 F.2d 927 (D.C. Cir. 1979).

Finally, Congress gave us jurisdiction over § 114(r) orders in 2003, a full 25 years after the CSRA was enacted and 15 years after *Fausto*. *See* Vision 100 -- Century of Aviation Reauthorization Act, Pub. L. No. 108-176, § 228, 117 Stat.

2490, 2532 (2003). It is thus reasonable to assume Congress knew that this later grant of jurisdiction would affect those earlier authorities. By contrast, the APA, § 1331, and the Back Pay Act were all enacted long before the CSRA. And as the Court said in *Fausto*, the proposition that "*pre*-CSRA remedies . . . were not meant to be affected by the [CSRA is] inherently implausible." 484 U.S. at 451 (emphasis added).[5]

For these reasons, we agree with the parties that a straightforward construction of the text of § 46110 is the correct one. Accordingly, we find that we have jurisdiction to review the SSI Order.

## III

Turning to the merits, the parties' comity regarding our jurisdiction yields to discord extending even to which question we need to answer to resolve this case. Lacson says that the only issue before us is whether his posts contained accurate information. He concedes that, if the staffing figures he disclosed were accurate, they would constitute SSI. *See* Oral Arg. Recording at 2:25-35. His only defense is that he made the figures up, and that they were false. *See id.* at 2:35-40; Lacson Br. 9, 14-15.

TSA, by contrast, maintains that it does not matter whether the figures in Lacson's posts were true or false. In its brief, TSA argues that even inaccurate statements may contain SSI if they are merely "technically" inaccurate and "reveal a concept or general state of affairs that should be protected in the interest of transportation security." TSA Br. 16. At oral argument, the agency made an even broader claim. There it argued that even

---

[5]This is not to suggest that a jurisdictional grant like § 46110 must have been enacted post-CSRA to avoid its scope.

a completely false statement -- such as the assertion that a particular flight has no Federal Air Marshals on it when it actually has 100 -- can constitute SSI if it would harm transportation security. Oral Arg. Recording at 30:55 - 31:50.

In the administrative proceedings under review, TSA made neither the broad nor the narrow version of the false information argument. *See id.* at 31:50 - 32:25 (acknowledgment by TSA counsel). It said only that the figures Lacson disclosed were SSI because they were both security sensitive and true. *See* SSI Order at 1; Notice of Proposed Removal at 6 (Feb. 11, 2011) (J.A. 23) (concluding that Lacson's claim that "the statements [he] posted were not true . . . lack[s] credibility, as the evidence reflects otherwise.").[6] Because we can sustain an agency action only on a ground upon which the agency itself relied, *see SEC v. Chenery Corp.*, 318 U.S. 80, 95 (1943), the contention that information can constitute SSI even if it is untrue is not before us. Rather, we can sustain TSA's decision that Lacson's posts were SSI only if (under our deferential standard of review) they were true, as the agency said they were.

TSA found that four of Lacson's posts contained SSI. *See* SSI Order at 1; Notice of Decision on Proposed Removal, at 1-2, 5 (May 31, 2011) (J.A. 29-30, 33) (listing posts). The agency points to two pieces of evidence that it says support the finding that the information in those four posts was accurate. Under the governing statute, "[f]indings of fact by the [agency], if

---

[6]The only TSA official who even addressed the issue below accepted the narrow version but rejected the broad version of this argument. *See* Email from R. Metzler to P. Erdman, at 1 (July 23, 2010) (J.A. 13) (suggesting that information can be SSI if it is "close enough to the real number to be detrimental," but noting that "[i]t has been the position of the SSI Branch that information known to be false is not SSI").

supported by substantial evidence, are conclusive." 49 U.S.C. § 46110(c). Accordingly, the only question before us is whether the two documents relied on by the agency contain substantial evidence that the four posts were accurate.

A

TSA defends the veracity of three of Lacson's four posts by citing a November 23, 2010 memorandum by John Bolton, Assistant Special Agent in Charge (ASAC) of TSA's Office of Professional Accountability. *See* Mem. from J. Bolton to W. Benner (Nov. 23, 2010) (J.A. 15).[7]

According to Bolton, he provided two of those posts to Kent Jeffries, Special Agent in Charge of TSA's Manpower Operations. *Id.* "[A]s the current manager of the [Federal Air Marshals] hiring program," Bolton explained, Jeffries could "attest to the accuracy" of Lacson's posts "given his knowledge of the subject matter" of those posts, which involved hiring at the national level. *Id.* As reported by Bolton, Jeffries "offered his expert opinion" that the postings were "factually true." *Id.* As for the third post, Bolton relied on a statement by James Bauer, Special Agent in Charge of TSA's Miami Field Office, who confirmed that the attrition rate that Lacson posted for that office was also accurate. *Id.*; *see* TSA Br. 8-9.

Lacson argues that Bolton's memorandum does not constitute substantial evidence because the statements of Jeffries and Bauer are hearsay. But there is no absolute bar against the admission of hearsay evidence in agency proceedings. *See Richardson v. Perales*, 402 U.S. 389, 410 (1971). To the

---

[7]These three posts are identified as Post 2282, Post 3194, and "a post undated." *See* Bolton Mem.; Notice of Decision on Proposed Removal at 1-2, 5.

contrary, "it is well-settled not only that hearsay can be considered by an administrative agency but that it can constitute substantial evidence." *Echostar Commc'ns Corp. v. FCC*, 292 F.3d 749, 753 (D.C. Cir. 2002); *see, e.g.*, *Richardson*, 402 U.S. at 402-10; *Crawford v. U.S. Dep't of Agric.*, 50 F.3d 46, 49 (D.C. Cir. 1995); *cf.* 5 U.S.C. § 556(d). "[A]dministrative agencies may consider hearsay evidence as long as it 'bear[s] satisfactory indicia of reliability,' *Crawford*, 50 F.3d at 49; and hearsay can constitute substantial evidence if it is reliable and trustworthy." *Echostar*, 292 F.3d at 753.[8]

The hearsay statements in the Bolton memorandum are not materially different from the ones we accepted as substantial evidence in *Honeywell International, Inc. v. EPA*, 372 F.3d 441 (D.C. Cir. 2004). In that case, we concluded that EPA had an adequate basis for its determination that a particular portion of the Hudson River contained a fishery, despite the fact that its only evidence was two hearsay statements relayed to the agency by its contractor. *Id.* at 447. According to the contractor, a biologist in the New Jersey Department of Environmental Protection's Bureau of Marine Fisheries told him by telephone that the biologist had recorded instances of fishing activity near the site of the alleged fishery. *Id.* The contractor also reported that he spoke with a representative of a Superfund team who told him that he had personally observed fishing activity in the area. *Id.*

In *Honeywell*, we concluded that the two statements constituted substantial evidence supporting EPA's determination, notwithstanding that they were hearsay, and

---

[8] *See Richardson*, 402 U.S. at 402-10; *Hoska v. U.S. Dep't of the Army*, 677 F.2d 131, 138-39 (D.C. Cir. 1982); *Johnson v. United States*, 628 F.2d 187, 190-91 (D.C. Cir. 1980); *Klinestiver v. DEA*, 606 F.2d 1128, 1129-30 (D.C. Cir. 1979).

despite the fact that EPA had failed to verify them by obtaining the underlying records. *Id.* We held that EPA was entitled to rely on the statements by the biologist and Superfund team representative because, given their responsibilities, they "were uniquely in a position to know" the relevant information. *Id.* (quoting *Nat'l Ass'n of Regulatory Util. Comm'rs v. FCC*, 737 F.2d 1095, 1125 (D.C. Cir. 1984)). Moreover, the petitioner had "point[ed] to nothing suggesting that the information" either one had provided "was unreliable." *Id.*

In this case, TSA likewise relies upon statements made by TSA officials who, given their responsibilities, were clearly in a position to know both the national (Jeffries) and Miami (Bauer) staffing data with respect to Federal Air Marshals. Nor has Lacson given us any reason to doubt either individual's reliability or integrity. That is enough for us to affirm the agency's decision on the authority of *Honeywell*.

But it is barely enough. Although our standard of review is relatively forgiving, in the future TSA would be well-advised to provide more direct evidence of the facts at issue, or affidavits by officials who possess personal knowledge of the facts, or more expansive explanations of the manner in which the officials confirmed those facts. If TSA wants to be confident that its orders will survive judicial scrutiny, it should have that kind of evidence in its decisional records.

B

The Bolton memorandum does not address Lacson's fourth post, identified as Post 3261, at all. For the veracity of that post, which mentioned certain hiring information, TSA relies exclusively on a memorandum written by Robert Metzler, a Senior Analyst in TSA's SSI program. *See* TSA Br. 14 (citing Mem. from R. Metzler to P. Algozzini, at 2 (Dec. 15, 2010)

(J.A. 17)). In that memorandum, Metzler wrote that he had consulted three sources to determine whether Post 3261 (among several others) contained SSI: (1) the text of 49 C.F.R. § 1520.5(b)(8)(ii); (2) a TSA "SSI Identification Guide"; and (3) "ASAC Bolton's 11/23/10 memorandum," which Metzler said he "relie[d] upon . . . to identify that information which is approximately accurate." Metzler Mem. at 2.

The problem for TSA is that Metzler's memorandum provides *no* evidence that Post 3261 was true. The first two documents upon which Metzler says he relied are regulatory texts that contain no information about the content of Lacson's posts. The third document is Bolton's memorandum. And although that memorandum does contain factual information about other posts, TSA concedes that it does not address Post 3261 at all. *See* Oral Arg. Recording at 33:53-57. The government speculates that Metzler may have had some independent knowledge of TSA hiring figures. *See id.* at 37:10-20. But there is nothing in Metzler's memorandum to support such speculation. To the contrary, the best reading of Metzler's memorandum is that he was merely confirming that Post 3261 contained the kind of information that *would* constitute SSI *if* it were true.

Accordingly, there is neither substantial evidence, nor any evidence, to support TSA's determination that Lacson's Post 3261 contained Sensitive Security Information.

IV

For the foregoing reasons, we affirm the SSI Order with respect to three of Lacson's posts, but set it aside with respect to Post 3261.

*So ordered.*