# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 25, 2025

Lyle W. Cayce
Clerk

————————

No. 24-40259

————————

Jeffrey Moats,

*Plaintiff—Appellant*,

*versus*

National Credit Union Administration Board, A Federal Administrative Agency; Todd M. Harper, Kyle S. Hauptman, Rodney E. Hood, *In their official capacity as Members of the National Credit Union Administration Board*; Jennifer Whang, *In her official capacity as an Administrative Law Judge and Inferior Officer of the United States*,

*Defendants—Appellees*.

————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:23-CV-147

————————————————————

Before Wiener, Douglas, and Ramirez, *Circuit Judges*.
Jacques L. Wiener, Jr., *Circuit Judge*:

The context for this appeal is an administrative enforcement action brought by the National Credit Union Administration Board (NCUA) against Plaintiff-Appellant Jeffrey Moats for alleged banking misconduct. To prevent the NCUA from conducting its enforcement action, Moats filed a complaint in federal district court in which he urged various constitutional

theories. But those merits are not before us. The only question before us is whether the district court erred when it dismissed Moats's complaint for lack of subject matter jurisdiction. It did not, so we affirm.

## I.

For over 25 years, Moats served as CEO of the Edinburg Teachers Credit Union (Edinburg), a small credit union in south Texas. In March 2021, the Texas Credit Union Department placed Edinburg into conservatorship and appointed the NCUA as the conservator. Moats recounts how the NCUA immediately fired him as CEO, seized all Edinburg property (including some of his personal property), and failed to provide him with the post-termination benefits to which he asserts entitlement. As a result, he sued the NCUA in Texas state court to obtain those benefits, but "the day before the Credit Union answered Mr. Moats's lawsuit (and countersued him seeking essentially the same relief the NCUA now seeks administratively)—the NCUA served a 'Notice of Charges' under 12 U.S.C. § 1786."

Moats then filed suit in federal court pursuant to 28 U.S.C. § 1331, attacking the NCUA's structure and authority.[1] The four claims ultimately before the district court alleged that: (1) the Administrative Law Judge was unconstitutionally shielded from removal; (2) the enforcement action deprived Moats of his right to a jury trial; (3) the cumulative effect of these constitutional deficiencies violates due process; and (4) in-house enforcement proceedings like this violate the non-delegation doctrine. Moats filed for summary judgment. The NCUA responded in opposition and included a cross-motion to dismiss for lack of subject matter jurisdiction. The

---

[1] The administrative enforcement action is stayed by mutual agreement of the parties pending this litigation.

No. 24-40259

district court granted the motion to dismiss, agreeing with the NCUA that 12 U.S.C. § 1786(k)(1) explicitly precludes the district court's jurisdiction. Moats appealed.

## II.

This court has jurisdiction to review a district court's final order. 28 U.S.C. § 1291. Dismissals for lack of subject matter jurisdiction are reviewed *de novo*. *Bank of La. v. FDIC*, 919 F.3d 916, 922 (5th Cir. 2019).

## III.

The sole issue on appeal is whether the district court erred by dismissing the case because it concluded that § 1786(k)(1) explicitly precludes district court jurisdiction. The statute at issue states the following:

> [E]xcept as otherwise provided in this section or section 1790d of this title, *no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under this section* or section 1790d of this title or to review, modify, suspend, terminate, or set aside any such notice or order.

12 U.S.C. § 1786(k)(1) (emphasis added). Moats contends that this provision does not expressly preclude jurisdiction because the language does not reference 28 U.S.C. § 1331. He also asserts that, under an implicit preclusion analysis, the statute fares no better. However, Moats asserts that even if we were to conclude that the statute precludes district court jurisdiction, such a holding would render § 1786 unconstitutional as applied to him because "[t]he Constitution cannot be read to deny a remedy where there is a right." He cites to the Supreme Court's recent opinion in *Axon Enterprise, Inc. v. Federal Trade Commission*, 598 U.S. 175 (2023), for the notion that his right not to be subjected to a constitutionally flawed proceeding must be accompanied by a remedy—here, the ability to sue in federal court to bring these structural challenges.

No. 24-40259

The NCUA disagrees, insisting that § 1786(k)(1) explicitly precludes district court jurisdiction and that binding precedent from this court and the Supreme Court have held as much in similar banking regulatory contexts with this statutory language. The NCUA also refutes the notion that Moats lacks a remedy because the statutory framework provides for review in the circuit courts of appeal, which can review and remedy constitutional infirmities, such as what occurred in *SEC v. Jarkesy*, 603 U.S. 109, 140 (2024).

Much of the jurisprudence in this area of the law involves the interpretation of 12 U.S.C. § 1818(i)(1), which contains materially identical language. The parties dedicated the majority of their briefing and oral argument to discussing cases that interpret § 1818, so we do the same.

As a preliminary matter, "Congress can limit district court jurisdiction if it so chooses." *Cochran v. SEC*, 20 F.4th 194, 200 (5th Cir. 2021) (en banc), *aff'd sub nom.*, *Axon Enter.*, 598 U.S. 175. Congress may do so either explicitly or implicitly. *See Axon Enter.*, 598 U.S. at 185; *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 489 (2010); *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207–13 (1994) (providing the implicit preclusion framework, known as the *Thunder Basin* factors); *Bank of La.*, 919 F.3d at 923.

"To discern an explicit preclusion, [courts] examine whether 'the text . . . expressly limit[s] the jurisdiction that other statutes confer on district courts,' such as 28 U.S.C. § 1331." *Bank of La.*, 919 F.3d at 923 (second and third alterations in original) (quoting *Free Enter. Fund*, 561 U.S. at 489); *see also Elgin v. Dep't of Treasury*, 567 U.S. 1, 25 (2012) (Alito, J., dissenting) (stating that "[w]hen dealing with an express preclusion clause . . . , we determine the scope of preclusion simply by interpreting the words Congress has chosen"). To discern implicit preclusion, courts

4

examine whether "the statutory scheme displays a fairly discernible intent to limit jurisdiction" and whether "the claims at issue are of the type Congress intended to be reviewed within the statutory structure." *Free Enter. Fund*, 561 U.S. at 489 (citation modified).

Until recently, our circuit's precedent on § 1818's jurisdictional preclusion was discernable but scattered. Courts and litigants alike analyzed *Bank of Louisiana v. FDIC* and *Cochran v. SEC*, alongside Supreme Court cases like *Board of Governors of the Federal Reserve System v. MCorp Financial, Inc.*, 502 U.S. 32 (1991),[2] to craft their positions. But we recently had the opportunity to put this matter to bed.

In our concurrently issued opinion, *Burgess v. Whang*, -- F.4th -- (5th Cir. 2025), we squarely answered whether § 1818 precludes district court jurisdiction. We held that it does so explicitly. *See generally id.* (exploring the statutory language, analyzing Fifth Circuit and Supreme Court precedent, and concluding that § 1818 explicitly bars district court jurisdiction). We also rejected the appellant's contention that *Webster v. Doe*, 486 U.S. 592 (1988), requires something more in order to preclude constitutional claims from a district court's jurisdiction, in part because the Supreme Court has held that *Webster*'s clear-statement rule is inapplicable when review is available in the circuit courts of appeals. *Burgess*, -- F.4th at -- (citing *Elgin*, 567 U.S. at 9–10). In *Burgess*, we conducted an extensive review of the caselaw on this

---

[2] In *MCorp*, the Supreme Court held that § 1818 explicitly precludes district court jurisdiction. "The action before us is not a challenge to a temporary Board order, nor a petition for review of a final Board order, nor an enforcement action initiated by the Board. Instead, [§ 1818's] preclusion provision appears to speak directly to the jurisdictional question at issue in this litigation:" whether a district court may enjoin the enforcement action from proceeding *at all*. *MCorp*, 502 U.S. at 38–39. The Supreme Court held that "Congress has spoken clearly and directly" in § 1818(i)(1) to preclude a district court's jurisdiction to affect by injunction (or otherwise, like declaratory relief) an ongoing enforcement proceeding. *Id.* at 44.

subject, and we need not reproduce that analysis here. *See generally id.* (exploring these issues in full).

Our holding in *Burgess* regarding § 1818's explicit jurisdictional preclusion controls here. Section 1786's language is materially the same and occurs within the similar context of banking regulatory enforcement. The district court analyzed § 1786's language by looking at cases that analyze § 1818. *Moats v. Nat'l Credit Union Admin. Bd.*, No. 3:23-cv-147, 2024 WL 1724271, at *2–4 (S.D. Tex. Apr. 9, 2024).

But we did not have the occasion in *Burgess* to address an argument that Moats presses here. Moats submits that *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1 (2000), requires a statute to reference § 1331 or another jurisdictional statute, to explicitly preclude district court jurisdiction. We disagree.

Contrary to Moats's position, *Shalala* does not stand for the notion that Congress *must* mention other jurisdictional statutes to explicitly preclude jurisdiction. In *Shalala*, the Supreme Court interpreted language in several Medicare and Social Security regulations that channeled claims "arising under" that statutory framework through an in-house agency review process. 529 U.S. at 6–10. There, an association of nursing homes (the Council) sued Shalala, the Secretary of Health and Human Services, in federal court, pursuant to § 1331 federal question jurisdiction, alleging that "certain Medicare-related regulations violated various statutes and the Constitution." *Id.* at 5. The Council alleged unconstitutional vagueness, due process violations, and that the regulations exceeded the agency's statutory authority. *Id.* at 7.

The jurisdictional language in the statute there differed significantly from § 1786 (and § 1818), in part because the provision cross-referenced several other provisions across the Medicare and Social Security regimes that

channeled claims through "the special Medicare review route"—an in-house adjudication. *Id.* at 7–9 (excerpting the various cross-referenced provisions and explaining that they "must be read together"). The question before the Court, however, was whether an action premised on § 1331 "challenging such a rule or regulation on general legal grounds" is an action "'to recover on any claim arising under' the Social Security or Medicare Acts[.]" *Id.* at 10 (quoting the statute at issue, 42 U.S.C. § 405(h)).

Much of the Court's analysis is inapplicable to the instant case because it addresses jurisprudential and statutory nuances of the Medicare and Social Security regimes. The portions on which Moats relies are Justice Thomas's (nonbinding) dissent, *id.* at 33–52 (Thomas, J., dissenting), and the Court's isolated statement that "[t]he statute plainly bars § 1331 review in [typical Medicare or Social Security benefits cases], irrespective of whether the individual challenges the agency's denial on evidentiary, rule-related, statutory, constitutional, or other legal grounds," *id.* at 10 (majority opinion). Moats reads this language as a requirement that Congress *must* cite to § 1331 if it intends to preclude such review in all cases. But this misconstrues the context of that excerpt and fails to account for later analysis in that opinion.

The Supreme Court spent significant time explaining *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 (1986), because that case involved the same statutory provision at issue in *Shalala*. *Shalala*, 529 U.S. at 15–20. The *Shalala* Court emphasized several times that there is a meaningful difference between channeling a claim through the agency first, with judicial review to follow, as opposed to no review at all. *See, e.g.*, *id.* at 19 ("Regardless, it is more plausible to read *Michigan Academy* as holding that § 1395ii does not apply § 405(h) where application of § 405(h) would not simply channel review through the agency, but would mean no review at all."); *id.* at 20–21 (rejecting the notion that channeling amounts to the

"practical equivalent of a total denial of judicial review" because "[t]he specific judicial review provision . . . authorizes judicial review" of final agency decisions and determinations (quoting *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 497 (1991))); *id.* at 22–23 ("Rather, the question is whether, as applied generally to those covered by a particular statutory provision, hardship likely found in many cases turns what appears to be simply a channeling requirement into *complete* preclusion of judicial review."); *see also id.* at 23 ("The Council's members remain free, however, after following the special review route that the statutes prescribe, to contest in court the lawfulness of any regulation or statute upon which an agency determination depends. The fact that an agency might not provide a hearing for that *particular contention*, or may lack the power to provide one, see [*Califano v. Sanders*, 430 U.S. 99, 109 (1977)] ("Constitutional questions obviously are unsuited to resolution in administrative hearing procedures . . .")); [] is beside the point because it is the 'action' arising under the Medicare Act that must be channeled through the agency. After the action has been so channeled, the court will consider the contention when it later reviews the action. And a court reviewing an agency determination under § 405(g) has adequate authority to resolve any statutory or constitutional contention that the agency does not, or cannot, decide." (citation modified and occasionally omitted)).

Thus, the *Shalala* Court did not hold that Congress *must* include a citation to § 1331 in a jurisdictional preclusion provision, as Moats believes. The Court instead took pains to explain the differences between in-house agency channeling requirements with judicial review to follow—with which the Court found no constitutional infirmity—and the total lack of any judicial review, in which case congressional intent to preclude district court jurisdiction would be a heavier interpretive lift. *See, e.g.*, *id.* at 19 (citing *Thunder Basin* for the proposition that "strong presumption against

preclusion of review is *not* implicated by provision postponing review" (emphasis added)). We refuse to hold that *Shalala* requires Congress use magic words to preclude jurisdiction, because such a holding is unsupported by *Shalala*'s context and analysis. *Shalala* is no bar to our holding that § 1786(k)(1) explicitly precludes district court jurisdiction in this circumstance.

## IV.

We must conclude that § 1786 explicitly precludes district court jurisdiction to "affect by injunction or otherwise the issuance or enforcement of" the NCUA's "notice or order" in its administrative enforcement action against Moats. *See* § 1786(k)(1). *See generally Burgess*, -- F.4th -- (holding that § 1818 explicitly precludes district court jurisdiction when the relevant § 1818(i)(1) language is identical to § 1786(k)(1)). As the district court reasoned, "the markedly expansive language of § 1786(k) alone is sufficient to establish the required intent to preclude constitutional claims" because "[s]imply put, 'any' means 'any.'" *Moats*, 2024 WL 1724271, at *3. "[A]n adjudication in [the district court] of his claims would plainly 'affect' the 'enforcement of' the pending Notice of Charges," since Moats sought to enjoin the proceeding. *Id.* at *3–4. The district court was correct in concluding that it lacked subject matter jurisdiction to hear Moats's suit and in dismissing his complaint.

AFFIRMED.